Ruffin, Chief Justice.
 

 question ÍRjm¡¡fc|ajpo.n the, three instruments which a r eJ in<r%iting of the supposed testator. Thay are
 
 execidfAt^nA
 
 proved in conformity to the pet of
 
 1s0.
 
 5,) and are effectual to p.ass the lands whidhr-thea>fflrport to dispose of, as well as personal estate: The instrument which was prepared in patches, and executed there, is also a good will of personalty; for to that purpose the re-execution here by the second signature,, and placing the paper with the others in the- depositories of the deceased, are sufficient, although it had been previously revoked abso-. lutely by cancellation. The only question, therefore, is, whether the Natches will is goo.d as a will of lands. We. think, upon the facts found by the jury, that it is..
 

 There was sufficient evidence of search for the subscribing witnesses in this state, and of their residence in other, states, to authorize proof of their handwriting, if they had been witnesses to any other instrument. We think the law does not place a will upon .a different footing from, other instruments in this respect. The act of 1789, (Rev. p. 308, sec. 1,) requires that a written will with witnesses
 
 *314
 
 thereto, shall, if contested, be proved by all the living witnesses, if to be found. The expression “ if to be found”' Is not to be construed literally. It admits of exceptions, where the witnesses are incompetent, or their attendance cannot be compelled. The reason in such cases is the same as if the witnesses were dead. The provision of the statute is but an adoption of the rule previously existing in England, upon the probate of a will upon an issue out of chancery; on which it is necessary to examine all the witnesses, because the heir is considered as having a right to evidence of his ancestor’s testable capacity and intention, from every one of those whom the statute calls around a testator, as guards against fraud on him, and imposition on those who would legally succeed to his estate. But several exceptions have been established. The insanity of one of the witnesses excuses the non-production of him.
 
 Berrett
 
 v.
 
 Taylor,
 
 9 Ves. Jun. 382. So, if the witness be abroad, or otherwise not amenable to the jurisdiction of the court. In
 
 Carrington
 
 v.
 
 Payne,
 
 5 Ves. Jun. 404, and
 
 Wood
 
 v.
 
 Stone,
 
 8 Price, 615, one of the witnesses lived in the West Indies, and his testimony was dispensed wdth, and proof of his handwriting received. The case of insanity is a strong illustration of the necessity for the construction of the statute, which we suppose to be correct. If that be admitted, the others follow upon a parity of reason. It is true, a commission might issue to take their depositions. But in a case like this, it would produce great delay, and be highly inconvenient. The witnesses live in different states, and could scarcely be expected to give useful evidence, without having the paper before them ; and that ought not to be allowed to be sent abroad, but upon the utmost necessity. After all, the witnesses might refuse to testify; and the Court can do' nothing more than ask them. It was not the intention of the legislature, that in such cases, the will should be lost. In
 
 Hampton
 
 v.
 
 Garland, 2
 
 Haywood’s Rep. 147, it was held, that a witness who was disinterested at the attestation, but had become interested before the trial, need not be offered, notwithstanding our statute. The same thing was admitted in
 
 Crowell
 
 v.
 
 Kirk,
 
 3 Dev. Rep.
 
 *315
 
 355; and it was there laid down by my brother Daniel, that where an attesting witness to a will is abroad, it is sufficient, as in other instances of instrumentary proof, to give evidence of his handwriting.
 

 The Court is also of opinion, that sufficient evidence was given to allow the paper to be read to the jury, although the handwriting of Cartwright, one of the witnesses, was not proved. The signatures of the party deceased, and of Lanier and Kerr, two of the witnesses, were proved ; and if they had been the only witnesses, it would have been sufficient; because the statute requires the attestation of but two witnesses. How it would have been in this case, if the parties had rested on that evidence, we do not say. Perhaps those who offered' the will, were excused from more by their inability, upon inquiry, to find a person in this state, who could prove Cartwright’s hand. But if not, the defect seems to be entirely cured by the evidence offered on the other side. They took the depositions of Kerr and of Cartwright himself, who testified to the sanity of the party deceased, and the execution of the paper as his will, which was duly -attested by those persons and Lanier, and which was the only paper of the kind which either of those persons ever attested. By this evidence, every thing is proved, which is required — the capacity of the party and the identity of the instrument— and if the jury believed the evidence, they might find that the party deceased thereby devised.
 

 The remaining questions made at the trial were, whether this instrument had been revoked; and if so, whether it had been republished. Upon the latter point, his Honor instructed the jury against the instrument, holding that it could not be republished, either by a second signature, or by the recognition of it as his will, in the codicils appended to it. The better opinion in England seems to be, that a paper duly executed according to the statute of frauds, incorporates into itself another paper, existing at the time, by such reference to it as identifies it beyond doubt. But all do not seem to be entirely agreed in that opinion. There are yet more doubts upon the power to incorporate or republish a previous paper, not in
 
 *316
 
 the handwriting Of the party decéásed, by reference to it, however dear, in a subsequent one, written by the party himself, upon the words of our act of 1784,
 
 {Rev. c. 225,
 
 "sec. 5,) which require “
 
 such
 
 will, and
 
 every part thereof,
 
 to be in the handwriting of the person whose will it appears to be.” In the present state of this case, however, the question, does not arise, as the jury found in favoCir Of the instrüménts generally, and the appeal was taken b.y the caveators-. The Court therefore expresses no opinion on this point;, but proceeds to the other.
 

 Whdther a paper not written by the testator becomes a pafrtofhis will, by being referred to in a will written wholly by him, and deposited among his .valuables? :Qtt.
 

 The 'act of 1819,
 
 (Rev. c.
 
 1004, sec. 1,) ñiakes á will revocable by another will in writing, or other -writing declaring the same, or by burning, cancelling, or obliterating the same, by the devisor himself, or in his presence, ‘and by his direction and consent. The statute does not ‘define what is such a cancellation or obliteration as shall 'amountjconclusively, to a revocation of a will. Burning, 'or the utter destruction of the instrument by any othe'r 'means, are clear indications of purpose, which cannot be 'mistaken. But obliterating may be accidental or may be íparfiál, and therefore is an equivocal act, in reference to ‘the whole instrument, arid particularly to those parts that 'are unobii'terated. So cancelling by merely drawing lines through the signature, leaving it legible, and leaving the body of the instrument entire, is yet mdre equivocal-, 'especially if the instrument be preserved by the party, and •placed in his depository as a valuable paper. It may be 'admitted that the slightest act of "cancellation with intent !to revoke absolutely, although such an intent contiriüe but 'for fin instant, is a total and perpetual revocation; and the paper can orily be set up as a new will. But that is 'founded upon the'interit. Without such intention,'no such '■effect can follow'; for the purpose of the mind gives thé cháfácter 'to the act. When, therefore, there appears what may be called a cancellation, it becomes necessary to look at the extent of it, at all the conduct Of the testator, at what he proposed doing at the time, and what he did afterwards, to satisfy the mind whether that was, in fact, meant as a cancelling, and was to operate "as á renovation immediately and absolutely, or only conditionally,
 
 *317
 
 ti pon ‘She contemplation of something else then in view. 'For although every act of cancelling imports
 
 'prima facie,
 
 that it is done
 
 animo revocandi,
 
 yet it is but a presumption which may be. repelled by accompanying or subsequent ‘•circumstances.
 
 In the Goods of Applebee,
 
 1 Hagg. 143, a will was altered in pencil, with the view that another might be drawn up, and then the testator cancelled it, and delivered the paper to a person to have the new draft prepared, but died before it was finished. Sir John Nicholl held that cancellation to have been merely preparatory to making‘a second will, and conditional only; and, therefore, not to bé a revocation. Upon the same principle proceeds the cases of
 
 Burlenshaw
 
 v.
 
 Gilbert,
 
 Cowper’s Reports 52, and others of that class, in which an express revocation by a second will is held not to destroy ■the first will, if the revoking will be itself revoked Or ‘destroyed,} and the first preserved.
 
 Onions
 
 v.
 
 Tyrer,
 
 1 Peere Wms. 343, is a still stronger case; for there, after 'executing the revoking instrument, '-the party cancelled the first will by tearing off the seal. ^¥et because it was 'apparent from the contents of the two’instruments that 'the latter Was intended to be a mere substitute for •the 'former, and as that could not operate as a will for want of the necessary attestations, it was held "that both the éxpreás revocation, and that implied from the cancellation did not effectually revoke the first will. The act Was regarded as a dependent one, to operate upon the 'supposition that the second will was duly executed, and therefore was said to be on that condition. Consequently, fin the event, it could not be absolutely a revocation. So, in
 
 Hyde
 
 v.
 
 Mason,
 
 3 Eq. Cas. Abr., and cited by Lord Mansfield, in
 
 Goodright
 
 v.
 
 Glazier,
 
 4 Bur. 2512, a testa-dor executed , his will, in duplicate, of which he kept'one, and delivered the ‘other to his executor. The testator made many and essential alterations in his own copy, and wrote another will, nearly corresponding to it as altered, hut never'completed it. Upon a commission of review, it was fyeld that the testator made the alterations and oblite-rations only upon the design to make a new will, and as that was never carried out, the first should stand; and
 
 *318
 
 much stress was laid ou the testator’s letting the executof keeP his duplicate, as aiding the presumption that the first will was not to be absolutely destroyed, unless a second should be made.
 
 Winsor
 
 v.
 
 Pratt, 2
 
 Brod. & Bing. 652, is another strong case. In it Chief Justice Dallas says, that “ he takes the rule to be, that where a testator designs to revoke a former will by an instrument making new dispositions, he discovers only a conditional intention to revoke; in other words, his intention to revoke is so coupled in appearance with his new testamentary act, that unless he completes such testamentary act, he is not looked upon in law as manifesting a deliberate purpose of revoking.
 
 The effect of cancelling
 
 depends upon the validity of the second will, and ought to be taken as
 
 one act,
 
 done at the same time ;• so that if the second will is not valid, the cancelling of the first being dependent thereon, ought to be looked on as null and inoperative.”
 

 These cases come up fully to that now before us. Supposing that we are to look upon the signature, though not effaced, as cancelled by the lattice lines through it, the inquiry remains, whether that was done with the intent to revoke the instrument, and if so, to do it immediately and absolutely. It may be admitted that the legal presumption is in the affirmative. Still there is enough here to
 
 go to the
 
 jury as evidence that the revocation was not self-subsisting, but was with the further view of making a new will, with alterations; and that the testator immediately changed that purpose, and preferred that his will should stand, and the alterations be introduced by way of codicil. It cannot be assumed, without any evidence to the point, that the crossbars were made over the signature at a different time from that of writing the codicils and signing all the papers. If done all at the same day, the intent very strongly appears. The party intended to dispose of his whole estate, as is clear from the codicils alone. In them he adopts the first paper in the strongest language. They are written on the same sheet, and are called “ additions to his willand begin with the words “ I wish
 
 my will
 
 to remain
 
 as it is,
 
 only,” &c.; and there are subsequently other clauses of the like import.
 
 *319
 
 It is clear, likewise, that the testator intended that his estate should go according to the provisions of this paper; and we are to suppose, in the point of view now under discussion, that it cannot do so under the paper as a republished will. If so, the argument is almost conclusive, that the cancellation was not
 
 animo revocandi,
 
 definitively. As in
 
 Onions
 
 v.
 
 Tyrer,
 
 the estate was intended for the same persons ; and, therefore, the revocation implied must be taken to have been on condition that a new will was made, or that the pld one would be good as republished by signing it again, and by the codicils. As, in fact, the party did not make a new will, and it turns out in law, that the old one was not thus republished, the whole purpose to which the cancellation was preparatory, has failed; and, therefore, the first ought to stand, as unrevoked. The reference to it in the codicils, and the preservation of all under the same sealed envelope, are much stronger than the circumstance relied on in
 
 Hyde
 
 v.
 
 Mason,
 
 of the testator not calling for the duplicate left with the executor. It is asked, why cancel, if not to revoke, in this case? But it may be asked in reply, why cancel simply to republish? For it is clear, that the party intended the property .to go by the paper, either as being unrevoked or republished. If a republication was not intended (and it seems, almost absurd that it should be), then the supposed revocation must have been with the view of making a new will; which was never carried out, and probably was instantly abandoned. If that be the truth of the case, the revocation referred to the making of a new will, and was not .to take effect before the occurrence of the relative act, namely, the execution of a new and effectual will. The documents indicate this train of thought in the mind of the party. Intending a will with most of the provisions of the old one, but with some change, he at first purposed that the whole should be in one instrument; accordingly, he drew his pen across his name on the old paper. Then it occurred to him, that he might make the alterations by a codicil; and, from hurry, or to save the trouble of writing all over again, he determined to give that form to the instruments,
 
 *320
 
 and
 
 not
 
 to revoke the first will. Hence the beginning words of the first codicil: “ I wish my will to remain as, i*.JP* only/’ &c. It is the natural language of a persop, in his situation to himself. It is also a declaration to thpge-who might find the paper after his. death, that thp apparent cancellation, was not to be taken, as by itself it nrfight be, to be evidence of a final revocation of that pjiper.. ‘ The contrary being my meaning, I evince it to you; by reinstating my signature, and by ^writing a codicil on the same paper, and therein sayinnkfltfplrst
 
 is still my mil,
 
 and, therefore, never was defi^H^revoked.’ In every point of view, thefefore, we think the Court and jury were, warranted in saying that the revocation of this instrument was not established by the evidence, and that the presumption of it was repelled.
 

 Judgment affirmed; which is to be certified to the-Superior Court of Caswell, that further proceedings maybe had in the proper Court for the full probáte of all these papers, as being together the testament and last will of' the testator, to pass his personal and real estate, therein, disposed i>f.
 

 Per Curiam. Judgment affirmed.