#### CUTLER v. CUTLER.

(Filed February 18, 1902.)

1. WILLS—*Revocation—Intent—Questions for Jury.*

Where a testator knows of the defacement and mutilation of his will by vermin, whether he intended it to be revoked thereby is a question for the jury.

2. WILLS—*Revocation—Evidence—Burden of Proof—Propounders.*

Where a will had been in testator's possession and is offered for probate with name of testator torn off or eaten off by vermin, the burden of showing that it had not been revoked is on the propounder.

3. EVIDENCE—*Admissions—Continuances.*

An admission of fact made to prevent a continuance for absence of a witness can not be used in a subsequent trial, the witness being present.

4. WILLS—*Witnesses.*

It is sufficient if the witnesses to a will sign before the testator, if signed in his presence.

ACTION by Samuel A. Cutler against C. J. Cutler and others, heard by Judge *O. H. Allen* and a jury, at February

Term, 1901, of the Superior Court of BEAUFORT County. From a judgment for the defendants, the plaintiff appealed.

*Chas. F. Warren,* for the plaintiff.

*Small & McLean,* and *B. B. Nicholson,* for the defendants.

FURCHES, C. J. This is an action of *devisavit vel non* of the will of Nathan C. Cutler. It is not contended but what he at one time intended the paper-writing, offered for probate, as his last will and testament. And while there are other exceptions to other matters, which will be considered, the principal question is as to whether it was revoked or not; and as this is the main question, we will assume that it was properly executed, and consider the question of revocation first.

There was a motion to nonsuit the plaintiff at the close of the evidence, and the whole evidence is sent up as a part of the case on appeal, including the script offered as the will, and the Clerk is instructed in the case on appeal to attach and send this as a part of the record evidence in the case. This script is, therefore, legitimately before us as a part of the evidence, to be considered for whatever it may be worth.

The script was written, and we will say, executed, some ten years or more before the death of Cutler, and his children all having married and left him, he abandoned his home with the purpose of living among his children; and, without moving his household furniture, a few months before he died, he rented to one James Asbury, who moved into his dwelling-house. Asbury, according to his evidence, found this script in an unsealed envelope, in an unlocked drawer of an old safe, belonging to the testator, left by him in said house, in which there were other papers. He said nothing to the testator about finding the will. The will had been seen by others who had been using the house for the purpose of storing grain, before the death of the testator, but they had not mentioned it to him.

The script, as it comes to us, is badly mutilated; the name of the testator, if it was ever there, and we take it that it was, is entirely gone, and it is badly mutilated in other respects. Much of the work of mutilation was the work of moths or vermin, and it is contended by the propounders that it was all done by them. But it looks to us as if it had been torn where the signature of the testator should have been. These were all matters for the jury upon the evidence and proper instructions from the Court.

The paper itself showed the mutilations, and, as there was much evidence tending to show that the testator knew of the defaced condition of this paper long before his death, it was contended by the caveator that if he did not tear the paper himself that there is abundant evidence showing that he accepted it as a destruction of his will, and that he intended to die intestate. And while it was not denied that there was evidence tending to show this to be the fact, the propounders contended that, unless the script had been defaced by the maker, or by some one for him in his presence, and by his direction, the will was not revoked; that he could not ratify the obliteration or destruction of the will by the vermin if he wished to do so; that a will properly executed could only be revoked in the manner above stated, or by making another will; and his Honor being of the opinion that the law was as contended by the propounders, so instructed the jury in substance. In this we think there was error.

Revocation consists of two things: the intention of the testator, and some outward act or symbol of destruction. A defacement, obliteration or destruction, without the *animo revocandi*, is not sufficient. Neither is the intention, the *animo revocandi*, sufficient without some act of obliteration or destruction is done. It seems to us that the Court placed too strict a construction upon the statute. The will was in the possession of the testator, and it seems from the evidence that

he knew of the obliteration, if he did not himself tear his name off the paper. He must have gotten this information by handling and inspecting the same, and, if so, it was done in his presence, or it was done and in his presence. And if he then had the *animo revocandi,* why was this not a compliance with the statute, and a revocation?

We find it stated in Pritchard on Wills, section 267 : "That every act of cancelling imports *prima facie* that it was done *animo revocandi,* yet it is but a presumption which may be repelled by accompanying or subsequent circumstances." And we find that this quotation is taken from the opinion of the Court, by Ruffin, C. J., in *Bethell v. Moore,* 19 N. C., 311. We also see in Pritchard on Wills, sec. 269, the following : "But it has been held that the failure of the testator, after being informed of the loss or destruction of his will, to execute another when he has time and opportunity to do so, furnishes a presumption of intention to revoke the lost or destroyed will; but this presumption may be rebutted or explained away by proof of the declarations of the testator, or other evidence." We find these views expressly stated in *Steel v. Price,* 44 Ky., 58. We are, therefore, led to the conclusion that if the obliteration was entirely by vermin, the question of revocation, *animo revocandi,* should have been left to the jury to say, from all the evidence, whether Nathan C. Cutler intended said script to remain his will or not; and it was error in the Court to take this question from the jury and to instruct them in effect that, if this was so, it did not amount to a revocation of the will.

The Court also instructed the jury that if the testator found the will in its mutilated condition, and, thinking that this was in law a revocation, and for that reason he said he had thrown it away or destroyed it, that would not amount to a revocation. The language of the witness Respass is, that Cutler told him that he had destroyed the will. The lan-

guage of the witness John B. Respass is as follows: "I said to him, your business is all fixed. I wrote your will. He said, 'No, the will you wrote for me I *have destroyed.* There were such changes in my property that the will would not fit anyway.'" He said nothing about his "opinion of the law," but simply, "I have destroyed" it. But we are unable to see what effect his opinion of the law would have had on the case, if he had destroyed it. The question for the jury upon this evidence was, had he destroyed it? Had he purposely torn his name from the will and thereby destroyed it? If he had, it was no longer his will.

But the Court instructed the jury that, "if the jury should find that the will was properly executed by Nathan C. Cutler, then the burden of proof shifted to the caveators to show by the greater weight of the evidence that the will had been revoked." This was error. If there had been no evidence of erasure or destruction on the script itself—if the paper had been perfect—this charge would have been correct. But where the name of the testator was gone, torn off by the testator, as the caveator alleges, or destroyed by moths, as the propounder contends, the propounders did not establish it as the will of Nathan C. Cutler by proving that it was originally executed by him. This would not have been so in an action on a note or bond, and is not in this case. And the burden of proof did not change to the caveators at this stage, and place the burden upon them to explain and show how the testator's name came to be off the paper. The will had been in the possession of Cutler; when produced, it had upon it these marks of mutilation, the testator's name being gone. It devolved upon the propounders to account for this, and it was not Cutler's will until he did so to the satisfaction of the jury. When the will was produced without the name of Nathan C. Cutler, this was *prima facie* evidence of a revocation, and the law presumed that it had been revoked. It is true this pre-

CUTLER *v.* CUTLER.

sumption might be repelled, but the burden of doing so was on the propounders. If this was not so, it would be to require the caveator to rebut the presumption that was in his favor. *Bethell v. Moore,* 19 N. C., 311; *Steel v. Price,* 44 Ky., 58; Pritchard on Wills, sections 267, 269; Underhill on Wills, section 225; Theo. Law of Wills, page 45. There was error in this instruction.

Upon the trial of this case at July Term, 1901, the propounders offered the following admission as a part of their evidence: "In the trial of this action, the caveator, Samuel A. Cutler, admits the following facts: That John B. Respass in the presence of the alleged testator, Nathan C. Cutler, signed the script propounded as his will as a subscribing witness thereto, at the request and in the presence of the said Nathan C. Cutler, who, also, signed it in the presence of the said witness, and declared it to be his last will." The caveator objected to this evidence, and C. F. Warren, Esq., made affidavit that he was the attorney of the caveator at February Term, 1898; that when the case was called at that term the caveator announced his readiness for trial, and the propounders stated that they were not ready for trial for the want of the testimony of John B. Respass, a subscribing witness to the will, when the caveator for the purpose of getting a trial at that term made the admission simply because the witness Respass was absent. At that term the caveator did not know that said Respass knew any other facts material to the execution or revocation of the will; that before the case was called for trial at this term, he, as the attorney of the caveator, had notified one of the attorneys for the propounders that Respass was then present, attending court as a witness, and that he should object to the introduction of said admission in evidence.

This testimony of Mr. Warren was not disputed by the other side. But the Court admitted this admission as evi-

dence, and the caveator excepted.  In this we think there was error.  It is not like a solemn admission of a fact in an answer, or otherwise, where it is intended by the parties to be permanent, and, in this respect, differs from *Guy v. Manuel,* 89 N. C., 83.  In this case it was made on account of the absence of Respass.  At this trial Respass was present, and the reason for making it ceased, and the propounders were notified of the fact of his presence, and that its admission would be objected to.  As the reason ceased, the admission should have ceased. The propounders lost nothing they had before the admission was made. But the admission itself says, *"In the trial* of ·this action."  The admission is in the singular—in *the* trial, and it was used in that trial.  The point presented is a singular one, and we have found nothing like it in the practice, and have put what we think is a just construction upon it, and do not think it should have been admitted.

There is one other question presented by the record that should be passed upon, and that is this:  It seems that the witnesses signed the will before ·the testator, Cutler.  But it was all done at the same time, and in the presence of each other—the witnesses seeing the testator's presence and the testator seeing the witnesses presence.  It therefore differs from *In re Cox,* 46 N. C., 321, where the witness signed the will at home, and not in the presence of the testator.  In that case it was held to be an insufficient execution of the will, but it is there intimated that, had the witness signed in the presence of the testator, though before the testator, it would have been sufficient.  It seems singular that the witnesses should have signed before the testator, as there was nothing at that time for them to attest.  It was certainly awkward and illogical for them to do so, and can only be sustained by its being all a part of one and the same transaction.  This exception of the caveator is not sustained, and there was no error in the

ruling of the Court upon this exception.    But for the errors pointed out in the opinion there must be a

New Trial.