DE YOUNG, RESPONDENT, *v.* BENEPE, APPELLANT.

(No. 3,949.)

(Submitted September 19, 1918.   Decided November 21, 1918.)

[176 Pac. 609.]

*Vendor and Purchaser — Contracts of Sale — Breach by Purchaser—Effect—Work and Labor — Quantum Meruit — Full Performance—Burden of Proof.*

Verdicts—When Against Law.
  1.  A verdict which is contrary to the instructions, is contrary to law.
New Trial—Disregard of Instruction by Jury.
  2.  Where the jury has disregarded a specific instruction, the supreme court will not inquire whether it is correct in point of law, but will direct a new trial, unless affirmance is required under section 7118, Revised Codes, prohibiting reversal where the proper result was reached notwithstanding the error committed.
Vendor and Purchaser—Contracts of Sale—Breach by Purchaser—Effect.
  3.  Where the vendor of land had exercised his option reserved to him in a contract of sale of land, by ousting the vendee because of failure to make payments as stipulated, the latter was relieved from further payment of taxes, interest, etc., and his refusal to do so could not thereafter be made the basis of an action by the vendor.
Work and Labor—*Quantum Meruit.*
  4.  One who has fully performed an express agreement for services may sue upon the *quantum meruit,* the limitation of recovery being the stipulated price.
Same—*Quantum Meruit*—Full Performance—Burden of Proof.
  5.  Where a purchaser of land, unable to carry out the provisions of his contract, had entered into a special agreement with the vendor, under which he was required to do certain work as well as to surrender the original contract and possession of the land, he was required to show, as a condition precedent to his right to recover on a *quantum meruit,* that he had fully performed in all three particulars.

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by Ike De Young against Frank L. Benepe. From a judgment in favor of plaintiff, and an order denying him a new trial, defendant appeals. Reversed and remanded.

*Mr. George D. Pease,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. George Y. Patten,* for Respondent, submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The trial of this cause in the district court resulted in a verdict and judgment in favor of plaintiff. Defendant has appealed from the judgment and order denying him a new trial.

The complaint contains two counts. The first alleges that on June 3, 1913, the plaintiff sold and delivered to defendant, at his special instance and request, on his farm in Gallatin county (described as "Sec. 15, Tp. 2 S., R. 2 E."), hay and grain of the reasonable value of $91, no part of which has been paid. The second alleges that between June 4 and October 2, 1913, the plaintiff furnished the defendant on his said farm, at his special instance and request, work of himself and his horses in preparing the land for a crop for the season of 1914, of the reasonable value of $783, no part of which has been paid.

The defendant in his answer joins issue on both counts, and alleges as an affirmative defense, by way of a counterclaim, the following: That on October 23, 1911, the plaintiff entered into a contract with one Berglund, now deceased, wherein the latter agreed to convey to the plaintiff the farm described in the complaint, upon these conditions: That plaintiff should pay Berglund therefor, at the Manhattan State Bank of Gallatin county, $25,600, $800 upon the execution of the contract, and the balance in ten equal annual installments on or before November 1st of each year, from 1913 to 1922, inclusive, with interest at seven per cent per annum on the sum remaining unpaid from time to time, except that plaintiff should have the privilege of

paying only one-half of the interest falling due on November 1, 1912, and the remaining half, without interest, on November 1, 1913; that plaintiff should pay all taxes and legal impositions levied upon the land subsequent to the year 1911; that in case plaintiff should make default in any of the payments or interest thereon as stipulated in the contract, or fail to perform any obligation assumed by him therein, the whole of the purchase price, with the interest thereon, should, at the election of Berg-lund, become at once due and payable, and the contract be for-feited and determined upon his giving the plaintiff thirty days' notice in writing of the amount due, and of his intention to can-cel and determine the contract; that plaintiff should thereupon forfeit all payments made up to that time, as well as all im-provements upon the land, and Berglund should have the right to re-enter and take possession; that time of payment should be an essential part of the contract, and that all the covenants and agreements contained in it should extend to and be obliga-tory upon the heirs, executors, administrators and assigns of the respective parties; that on May 15, 1913, the defendant be-came the owner and holder of the contract; that plaintiff had failed to pay any interest upon the purchase price as provided therein; that on June 3, 1913, there was due defendant interest at the rate of seven per cent on $24,800 from October 23, 1911, amounting to $2,786.75; that plaintiff had also failed to pay the taxes for the year 1912, amounting to $68.41, which defendant had paid; that on June 3, 1913, after negotiations between plaintiff and defendant relating to the payment by plaintiff of the interest due and the taxes paid by defendant, it was agreed between them that plaintiff should continue in possession of the land until the fall of that year; that he should plow and pre-pare the land for a crop for the year 1914; that he should use his horses, furnishing for their maintenance the hay and grain referred to in the complaint; that defendant should furnish other horses and men necessary to aid in doing the work, and food for the maintenance of the men and horses; that plaintiff should have the right until fall to sell the land or to raise money

sufficient to pay the past-due interest and taxes paid by the defendant, and also to reimburse defendant for the use of the other horses, for the wages of the men, and the value of the food furnished by him; that if he failed to do this he should surrender the land to the defendant, who thereupon would release the plaintiff from the contract of purchase, so that neither party thereafter should have any claim thereunder against the other; that, in pursuance of this agreement, plaintiff remained in possession of the land, and prepared it for a crop, furnishing his horses, harness and such implements as he had, and also the hay and grain referred to in the complaint, the defendant furnishing the additional men and horses necessary to do the work, together with food for the men and the horses other than that furnished by plaintiff; that on October 4, the plaintiff having failed to sell the land and to pay the interest and the taxes paid by the defendant, and to reimburse the defendant for the horses and men and the food furnished by him, defendant gave him notice in writing, as provided in the contract of sale, that the contract was terminated, and demanded that at the end of thirty days from that date plaintiff should surrender to · him the possession of the land; that the plaintiff failed and refused to surrender possession or to comply with said notice; that on January 24, 1914, this defendant brought an action against the plaintiff in the district court of Gallatin county to recover possession of the land and for damages for its detention; that such proceedings were had therein that on February 16, 1914, a decree was entered therein in favor of the defendant, the defendant by stipulation waiving all damages against the plaintiff; that the plaintiff thereupon delivered possession of the land to the defendant; that plaintiff has never paid the interest which accrued on the purchase price under the contract of sale, nor the taxes paid by defendant, and that there is due from the plaintiff in this behalf the sum of $3,080.36, after allowing the plaintiff the full amount claimed by him in the complaint. Judgment is demanded for this amount.

To this counterclaim a general demurrer was interposed by the plaintiff, which was overruled. In his reply plaintiff admits that he had entered into the contract with Berglund as alleged, that the defendant thereafter became the owner of it, and that on June 3 the plaintiff was in default in the payment of interest as therein provided. He denies that he remained in possession of the land under the agreement alleged by the defendant; and alleges that on the said date he surrendered possession to the defendant, who thereafter remained in possession; that on and after said date he furnished to the defendant the hay and grain and the work and labor of himself and horses as alleged in the complaint, and that he prepared the land for a crop under the direction of defendant. He admits that the action was brought as alleged by defendant, and that it resulted in a decree in defendant's favor. He denies generally all the other allegations in the counterclaim not specifically admitted.

Counsel assails the validity of the judgment on the grounds that the trial court erred to the prejudice of the defendant in certain rulings upon questions of evidence during the trial, in submitting instructions to the jury, and denying defendant a new trial because of the insufficiency of the evidence to justify the verdict.

Upon a careful consideration of the several rulings upon questions of evidence we have found no prejudicial error in any of them. We therefore pass them without special notice.

In paragraph 2 of its charge the court instructed the jury as follows: "You are instructed that the defendant set up a counterclaim in this action for unpaid interest due under the contract between plaintiff and Peter A. Berglund, dated October 23, 1911, for the sale to the plaintiff of section 15, township 2 south of range 2 east. The defendant admits the execution of this contract, and that on the fifteenth day of May, 1913, the defendant, F. L. Benepe, became the owner and holder of said contract, and that he was on said date, and ever since has been, the owner of all the right, title, and interest in and to the real estate described in said contract, being section 15, in township

2 south of range 2 east. The plaintiff further admits that he failed, neglected and refused to pay any interest on the purchase price for the land as provided in said contract, and that on the third day of June, 1913, there was due to the defendant from the plaintiff, Ike De Young, interest at the rate of seven per cent per annum on $24,800 from the twenty-third day of October, 1911, and that such interest amounted at that time to $2,786.75, and that plaintiff failed to pay the taxes levied on said land for the year 1912. Under these admissions it becomes incumbent on the plaintiff to prove, by a preponderance of the evidence, that he has paid, satisfied and discharged the amount of said interest, as provided in said contract, and unless the plaintiff has proved by a preponderance of the evidence that since the third day of June, 1913, he has paid to the defendant in this action the said sum of $2,786.75, and interest on said $24,800 at the rate of seven per cent per annum from June 3, 1913, to February 16, 1914, then your verdict must be for the defendant in this action for the full amount of said interest claimed by him. The defendant also sets up that he paid the county and state taxes for the year 1912, levied upon section 15, township 2 S. R. 2 E., amounting to $68.41, and that the plaintiff has not repaid the said sum. The burden of proving the payment of these taxes is upon the defendant. If the defendant has proved by a preponderance of the evidence that he paid said taxes, then he is entitled to recover the sum from the plaintiff in this action, unless the plaintiff has proved by a preponderance of the evidence to your satisfaction that he has repaid the same to the defendant; but before the defendant is entitled to recover upon his counterclaim he must prove the material allegations by a preponderance of the evidence.''

It being admitted in the reply that plaintiff was in default in the payment of interest, and it being shown by defendant's evidence without dispute that he had paid the taxes for the year 1912, counsel insists that this instruction was in effect a peremptory direction to the jury to find for the defendant, and that, since the jury manifestly disregarded it, the defendant is

entitled to a new trial without regard to whether it is correct [1, 2] in point of law, on the ground that the verdict is contrary to law. In view of the admissions and the undisputed evidence referred to by counsel, the verdict is clearly contrary to the instruction, and is therefore contrary to law. This court has frequently held that, when the record discloses that the jury has disregarded a specific instruction, it will not inquire whether the instruction is correct, but will direct a new trial on this ground. (*Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *King* v. *Lincoln*, 26 Mont. 157, 66 Pac. 836; *Allen* v. *Bear Creek C. Co.*, 43 Mont. 269, 115 Pac. 673.)

Counsel for plaintiff, to avoid the consequences of the rule announced in these decisions, has incorporated in the statement of the case his exceptions to the order of the district court overruling his demurrer to defendant's counterclaim, and an order denying his motion for a nonsuit thereon at the close of defendant's evidence, and invokes the provisions of section 7118 of the Revised Codes, which declare: "Whenever the record on appeal shall contain a bill of exceptions or statement of the case properly settled, setting forth any order, ruling or proceeding of the trial court against the respondent affecting his substantial rights on the appeal of said cause, together with the objection and exception of such respondent properly made and reserved, settled and allowed in such bill of exceptions, or statement, the supreme court on such appeal shall consider such orders, rulings or proceedings, and the objections and exceptions thereto, and shall reverse or affirm the cause on said appeal according to the substantial rights of the respective parties, as shown upon the record. And no cause shall be reversed upon appeal by reason of any error committed by the trial court against the appellant where the record shows that the same result would have been attained had such trial court not committed an error or errors against the respondent."

These two orders were clearly erroneous. It is manifest that, [3] when the defendant had exercised his option to terminate the Berglund contract as therein provided, it was at an end

for all purposes as a binding obligation upon either party, and could not thereafter be made the basis of an action. The result was that the defendant was released from his obligation to make a conveyance of the land, and the plaintiff from his obligation to pay the purchase price, including the interest, and also the taxes for the year 1912. Thereafter the defendant could not be heard to assert that the plaintiff was bound to answer to him for a breach of the contract. He could not oust the plaintiff from the land, as he did, and then claim that plaintiff was indebted to him in any amount. The court should have sustained the demurrer, and thus eliminated the counterclaim entirely. Therefore, notwithstanding the decisions citing *supra,* the plaintiff would have been entitled to have the judgment affirmed under the statute, if the evidence was sufficient to justify the verdict. The statute was enacted for the express purpose of enabling this court to avoid reversing judgments and ordering new trials in cases in which the jury has reached a correct conclusion notwithstanding errors committed by the trial court. .

When we come to examine the evidence, however, we are constrained to the conclusion that it is not sufficient to justify the verdict. Plaintiff was the principal witness in his own behalf. His testimony is vague and indefinite. On his examination in chief he testified, in substance: That he had retained possession of the land purchased under the Berglund contract from the date of the contract until June 3, 1913; that on that date he turned the land over to the defendant; that thereafter he worked for defendant and under his directions; that he used all his horses in the work; that he, along with other men hired by defendant to assist him in preparing the land for a crop for the following year, fed the hay and grain referred to in the complaint, and when that was exhausted they bought more to feed his and other horses furnished by the defendant; that defendant told him to feed this and then buy more; that this was done for defendant because he had nothing to do with the land after June 3. Questioned as to who requested him to

work there after June 3, he said: "Mr. Benepe asked me if I would work there because the wheat was not sowed as yet; and the worms had eaten out the wheat that was sowed except 100 acres of wheat, which was good yet; and I turned it over to Mr. Benepe. He asked me if I would stay there and work if he fed horses and I work for him." He was then questioned at length as to the prevailing rate of wages for men, the rate *per diem* at which horses could be hired in that locality, the number of horses he had, and the number of days he was employed with his horses. On cross-examination he stated: "When Mr. Benepe came out there he asked me what the matter was—what was the reason that I wanted him to come out—and I told him that I didn't have any money to farm the place any more, and the worms had eaten part of the crop, and that I couldn't make the payments in the fall and I didn't know what to do. Then he asked me if I would stay there and work for him. He asked me, if he would take the place, if I would stay there and work for him, and I told him that I could. Then he asked me how much I wanted, and I told him I had $1,200 in the place when I started, and if I could get that out I would stay there and work for him—that is, if I could get the $1,200 back out of it. I told him if I could get the $1,200 back that I had put in that I would stay there and work until the land was clean again. When I got the land, part of it was prairie, and I broke 240 acres, and the rest of the land was in crop by another party when I got it. When I told him that I wanted my $1,200 back, and I would stay there until the land was clean, he asked me, just before he left, if he paid me the $1,200 if I would return the contract I had with Mr. Berglund, and I told him I would. At this time he was sitting on a log out there beside the cabin. Then he talked about how he wanted to send men out and all that kind of stuff. * * * Q. Was the arrangement with Mr. Benepe that you were not to deliver possession to him unless you got the pay? A. I don't understand that right." The question being repeated, he answered: "Yes, he asked me if I would—if he would pay me if I would return the contract, and

I said, 'Yes.' The arrangement was I was to leave the land if he would pay me for this work; if he would pay me the $1,200 that we talked about that I had in it; if he would pay me that the arrangement was I would leave the land and return the contract. The $1,200 was not for this work, but it was the money that I had put in the land. That was the arrangement that I had on the 3d of June. I told you that the reason that I didn't leave the land in the fall of 1913 was that I hadn't received any pay—I didn't get my $1,200.  *  *  *  Q. Now, was there anything said in this conversation that you said you had with Mr. Benepe on the 3d of June, 1913, about any price that was to be paid to you for your teams or your labor? A. No; I told him if I had $1,200 out of that I would be satisfied· and would stay there until fall. Q. Then you say now, Mr. De Young, that the arrangement that Mr. Benepe was to pay you $1,200 was to include your labor and the teams and everything, and you were to get off by fall. Was that it? A. Yes, sir. Q. That was the arrangement? A. Yes, sir.''

Peter Van Dyken, the only other witness who testified for plaintiff, after being questioned as to the prevailing rate of wages for men and the rate paid for horse hire, stated that he had a conversation with defendant about July 13, when the witness was employed by him to assist the plaintiff, during which, in answer to an inquiry by witness if the plaintiff ''had thrown up the place,'' the defendant said he had. Nowhere in the evidence does it appear that plaintiff then or thereafter surrendered the Berglund contract to defendant, or that he ever offered to do so, or that he offered to surrender possession of the land.

This testimony was not aided in any way by that of the defendant. On the contrary, the testimony of the defendant controverted that of the plaintiff and his witnesses, and tended to establish the agreement set out in the counterclaim.

Plaintiff brought his action in *assumpsit* instead of on the [4] special agreement, upon the theory that, having fully performed the agreement on his part, he was at liberty to count

on the implied *assumpsit*, the limitation of recovery being the stipulated price. There is no doubt as to the correctness of this theory. The course adopted by counsel has directly or impliedly been recognized as proper by this court in the following cases: *Blankenship* v. *Decker*, 34 Mont. 292, 85 Pac. 1035; *Riddell* v. *Peck-Williamson H. & V. Co.*, 27 Mont. 44, 69 Pac. 241; *Cook & Woldson* v. *Gallatin R. Co.*, 28 Mont. 509, 73 Pac. 131; *McFarland* v. *Welch*, 48 Mont. 196, 136 Pac. 394; *Waite* v. *Shoemaker*, 50 Mont. 264, 146 Pac. 736.

That the special agreement was entire is obvious from the fact [5] that the consideration was entire, and that the defendant was not to become indebted to plaintiff until he had done the work, surrendered the contract, and given up possession of the land. To make out his case, therefore, plaintiff was bound to show that he had fully performed the agreement on his part; in other words, that, besides doing the work, he had surrendered the contract, and with it the possession of the land. ·(*Riddell* v. *Peck-Williamson H. & V. Co.* and *Waite* v. *Shoemaker*, *supra*.) Now, the evidence, as pointed out above, fails to show a surrender of the contract. So far as it tends to show anything in this regard, plaintiff retained possession of it and all the rights conferred by it. In addition to this, it is admitted by plaintiff in his reply that he remained in possession of the land until he was ousted by judgment in the action brought by defendant. Therefore the evidence is wholly insufficient to justify the verdict and defendant is entitled to a new trial.

Upon the facts disclosed by the record we do not find any merit in the several other assignments made by counsel.

The cause is remanded to the district court, with directions to grant a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE PIGOTT did not hear the argument, and takes no part in the foregoing decision.