THE HON. WILLIAM L. HOLLOWAY,  
THE HON. ALBERT J. GALEN,  
THE HON. ALBERT P. STARK,  
THE HON. JOHN A. MATTHEWS,  
} Associate Justices.

---

KELLY, RESPONDENT, *v.* KIPP ET AL., APPELLANTS.

(No. 5,916.)

(Submitted September 16, 1926. Decided October 6, 1926.)

[250 Pac. 819.]

*False Imprisonment — Evidence — Sufficiency—Verdict—When not Excessive—Jury—Judges of Weight of Testimony—Appeal—Trial—Continuance—Affidavit not Evidence on Second Trial.*

Instructions—Law of Case.
   1. An instruction, right or wrong, given without objection, is the law of the case, is binding upon the jury and a verdict rendered in disregard of it would be contrary to the law.
Trial—Jury—Sole Judge of Weight of Testimony.
   2. In an action at law the jurors are the sole judges of the weight to be given to testimony; they are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds as against those of a lesser number which satisfy them.

---

1.   See 2 R. C. L. 243.
2.   See 28 R. C. L. 657.

[77 Mont. 110.]

**Appeal—Verdict Binding on Supreme Court—When.**

3. A verdict based upon evidence which from any point of view could have been accepted as credible by the jury, is binding upon the supreme court even though it may appear inherently weak and, if submitted to it, it might have made a different finding, especially so if the verdict was approved by the trial court by denying a new trial.

**Same—When Verdict will not be Set Aside for Insufficiency of Evidence.**

4. The verdict of a jury will not be set aside on appeal upon the ground of insufficiency of the evidence if there is any substantial evidence to support it.

**False Imprisonment in Insane Asylum—Evidence—Sufficiency.**

5. Evidence in an action for false imprisonment in an insane asylum *held* sufficient to sustain the finding of the jury that during the time of plaintiff's detention she was sane, where the only question of fact submitted to the jury, under the instructions of the court, as to liability or nonliability of defendant, was the question of her sanity or insanity during the period of her detention.

**Same—When Verdict not Set Aside as Excessive.**

6. In cases where it is manifestly impossible to find any fixed standard by which to measure compensation to be allowed as damages—such as an action for false imprisonment—the verdict will not be held excessive unless it is the result of prejudice, passion, partiality or other improper motive, and under that rule a verdict for $3,000 for false imprisonment in an insane asylum for about four months and $5,000 for performing an operation upon plaintiff's body without her consent, *held* not excessive.

**Trial—Continuance—Affidavit not Evidence on Subsequent Trial.**

7. An affidavit filed in support of a motion for a continuance on account of the absence of a witness and setting forth what the witness would testify to if present, the motion being denied on opposing counsel's admission that the witness would so testify, is not admissible as evidence on a second trial of the cause as testimony given at a former trial between the same parties relating to the same matter. (Rev. Codes 1921, sec. 10531.)

**Same—Continuance—Admission to Avoid Delay Ceases, When.**

8. Where in order to avoid the continuance of a cause a party admits that an absent witness of his opponent would testify to a certain fact, such admission does not stand for all time, but ceases with the trial which it was intended to accelerate.

---

[1] Appeal and Error, 3 C. J., sec. 818, p. 922, n. 36; 4 C. J., sec. 2557, p. 665, n. 2; sec. 3187, p. 1166, n. 76.

[2-4] Appeal and Error, 4 C. J., sec. 2834, p. 853, n. 59; p. 854, n. 68, 74; p. 855, n. 82; sec. 2839, p. 864, n. 34. Trial, 38 Cyc., p. 1516, n. 57; p. 1521, n. 84.

[5] False Imprisonment, 25 C. J., sec. 156, p. 547, n. 20.

[6] Appeal and Error, 4 C. J., sec. 2847, p. 872, n. 19; p. 873, n. 20. False Imprisonment, 25 C. J., sec. 186, p. 568, n. 86.

[7] Evidence, 22 C. J., sec. 510, p. 427, n. 61.

[8] Evidence, 22 C. J., sec. 385, p. 340, n. 7; sec. 510, p. 427, n. 61.

4. See 2 R. C. L. 194.
8. See 6 R. C. L. 571.

*Appeal from District Court, Deer Lodge County; George B. Winston, Judge.*

ACTION by Gina Kelly against Susan Kipp and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. T. B. Stewart,* for Appellants, submitted a brief; *Mr. Choate* and *Mr. Stewart* argued the cause orally.

The evidence was insufficient to justify the verdict. Under this heading we propose to treat the subject of the excessiveness of the damages awarded. It is well settled that wholly apart from the question of passion and prejudice in influencing a verdict, the question of its excessiveness can be reviewed under the specification that the evidence is insufficient to sustain the verdict which is one of the grounds upon which defendant's motion for a new trial was made. (*Bull* v. *Butte Electric Ry. Co.,* 69 Mont. 529, 223 Pac. 514; *Lappin* v. *Martin,* 71 Mont. 233, 228 Pac. 763.)

The verdict was influenced by passion and prejudice. (*Gillespie* v. *Great Northern Ry. Co.,* 63 Mont. 598, 208 Pac. 1059; *Hall, Admx.,* v. *Northern Pacific Ry. Co.,* 56 Mont. 537, 186 Pac. 340; *Kelley* v. *John R. Daily Co.,* 56 Mont. 63, 181 Pac. 326; see, also, the note to the case of *Weigel* v. *McCloskey,* 113 Ark. 1, Ann. Cas. 1916C, 503, 166 S. W. 944.)

The verdict was against law. "A verdict is 'against law' when it is contrary to the law of the case as given to the jury in the instructions." (*Bush* v. *Baker,* 51 Mont. 326, 152 Pac. 750; *De Young* v. *Benepe,* 55 Mont. 306, 176 Pac. 609; *Wallace* v. *Weaver,* 47 Mont. 437, 133 Pac. 1099; *Cotter* v. *Butte, etc.,* 31 Mont. 129, 77 Pac. 509.) "A verdict rendered in arbitrary and capricious disregard of unimpeached testimony is one against law." (*Harwood* v. *Scott,* 65 Mont. 521, 211 Pac. 316.)

[77 Mont. 110.]

The court erred in excluding the affidavit of defendant Hathaway used as evidence at the former trial. The testimony was vital to the defense. It showed that during the entire period of plaintiff's confinement in two asylums she had been a pronounced paranoiac. That it was competent for the defendants to show plaintiff's mental condition for a period of four or five years immediately prior to her reception at the Montana institution, we think there can be no doubt (32 C. J. 760; *In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004); *In re Baker's Estate,* 176 Cal. 430, 168 Pac. 881, the court held that evidence of the testator's mental condition going as far back as fifty years was admissible.

*Mr. F. F. Haynes* and *Messrs. Canning & Geagan,* for Respondent, submitted a brief; *Mr. P. E. Geagan* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This action was instituted by the plaintiff against the defendants to recover damages. The complaint contains the statement of two causes of action, the first being for false imprisonment. In this cause the plaintiff charges that the defendants unlawfully seized her person in the state of Wisconsin, and against her will and without her consent forcibly transported her to the Montana State Insane Asylum at Warm Springs, and there confined and imprisoned her without her consent for a period of about three and one-half months, and that by reason thereof she suffered damages.

In the second cause of action the plaintiff alleges that while she was so unlawfully imprisoned within said asylum, the defendants wilfully and maliciously and without her consent and over her protest forcibly assaulted her and performed certain operations upon her body, which are specifically described. She further alleges that during all of the times mentioned the defendant Hathaway was a duly licensed physician

and surgeon within the state of Montana and superintendent of said state asylum; that the defendant Kipp was an employee of said Hathaway in his official capacity, and engaged as a nurse; that by reason of the assault upon her body by the defendants she suffered great mental and physical pain and anguish, by reason of which she has been injured in mind and body and in the general condition of her health.

By their answer the defendants denied that they falsely imprisoned the plaintiff or that they did wilfully or maliciously commit an assault upon her person. They admit that they went to the state of Wisconsin and brought the plaintiff to the state of Montana and received her into the state insane asylum, and that in transporting the plaintiff from the state of Wisconsin to Warm Springs they acted with full legal authority, and that the operation performed upon her body was with full legal authority given to them by J. A. Kelly, the guardian of the person and estate of the plaintiff. To this answer the plaintiff filed a reply raising issues of fact to be tried by a jury.

The case was tried to a jury and resulted in a verdict in favor of the plaintiff for the sum of $3,000 on her first cause of action, and $5,000 on the second cause of action. The defendants moved for a new trial upon the grounds: (a) That as to each cause of action the damages were excessive and appeared to have been given under the influence of passion and prejudice; (b) that the evidence was insufficient to justify the verdict, and that it was against the law; (c) that the court erred in excluding from the consideration of the jury certain evidence offered by the defendants. The motion for a new trial was denied, and the defendants appealed from the judgment.

By their assignments of error counsel for defendants have presented for our consideration these questions: (1) Was the verdict against the law? (2) Does the verdict appear to have been given under the influence of passion and prejudice? (3)

Were the damages awarded excessive? (4) Did the court err in excluding evidence offered by the defendants?

1. We shall first consider counsel's contention that the verdict in favor of the plaintiff upon the first cause of action is against the law, which contention is based upon the alleged failure of the jury to follow the court's instruction No. 19, which was as follows:

"The jury are instructed that it is alleged in the complaint of the plaintiff, and admitted in the answer of the defendant, that the defendant R. J. Hathaway was, at all the times mentioned in the pleadings in this action, a physician and surgeon duly licensed to practice his profession within the state of Montana, and that he was, at all such times, the duly and regularly appointed and regularly constituted custodian and superintendent of the Montana State Hospital for the Insane located at Warm Springs, Montana, and that the defendant Susan Kipp was, at all such times, assistant to the said defendant R. J. Hathaway in the practice of his profession of medicine and surgery and in his capacity as custodian and superintendent of the said Montana State Hospital for the Insane.

"If you find from the evidence in this case that upon or about March 31, 1924, and thereafter until about July 15, 1924, the plaintiff was insane, that one J. A. Kelly had, by an order of the district court of Rosebud county, state of Montana, duly made or given on or about the 18th day of November, 1918, been appointed guardian of the person and estate of the plaintiff, and if you further find from the evidence that the said J. A. Kelly, acting as the guardian of the person and estate of the said plaintiff, made arrangements with and instructed the said R. J. Hathaway, as superintendent of the said Montana Hospital for the Insane, to take the plaintiff from the said Riverside Sanitarium at or near Milwaukee, Wisconsin, and receive and detain her as an insane person at the said Montana Hospital for the Insane at Warm Springs for treatment, and that pursuant to such arrangements and in-

structions, and acting in accordance therewith, the said R. J. Hathaway as such superintendent of the said Montana Hospital for the Insane, and the said Susan Kipp, acting under and by direction of the said Hathaway, took the said plaintiff from the said Riverside Sanitarium and received and detained the plaintiff at the said Montana Hospital for the Insane for treatment as an insane person, and that after a careful investigation and examination of the plaintiff in good faith the defendant R. J. Hathaway entertained the belief, based on such investigation and examination, that the plaintiff was insane, then and in such event the defendants Hathaway and Kipp were justified in taking and receiving and detaining said plaintiff at the said Montana Hospital for the Insane, and your verdict must be for the defendants on plaintiff's first cause of action, even though you should further find and believe from the evidence that the plaintiff was never legally committed to the said Montana Hospital for the Insane by any court or commission authorized by law to commit persons to said institution."

This instruction was given without any objections on the part [1] of the defendants, and we are not in position to now inquire whether or not it correctly states the law. Right or wrong it was binding upon the jury, and a verdict which disregarded it would have been contrary to the law. (*Harwood* v. *Scott,* 65 Mont. 521, 211 Pac. 316; *De Young* v. *Benepe,* 55 Mont. 306, 176 Pac. 609; *Bush* v. *Baker,* 51 Mont. 326, 152 Pac. 750.)

In reference to the appointment of J. A. Kelly as guardian of the person and estate of plaintiff, the court by its instruction No. 16 told the jury that he had been so appointed by an order of the district court of Rosebud county on November 18, 1918, and likewise that he had been at least a guardian *de facto* until September 19, 1924, and by instruction No. 17 told the jury that the defendant Hathaway had a right to rely upon the regularity of such appointment in the absence of notice of any facts which should have put him upon inquiry

concerning the same. The evidence does not disclose that the defendant Hathaway ever came into possession of any facts sufficient to put him on inquiry as to the regularity of this appointment.

The arrangement made between Kelly, acting as guardian, and the defendant Hathaway, was proven and not denied. That the defendants Hathaway and Kipp took the plaintiff from the Riverside Sanitarium near Milwaukee and received and detained her at the Montana State Insane Asylum is pleaded by both sides and conclusively established by the record. It is not controverted but that Hathaway made examination of the plaintiff, and that from such examination, and based thereon, entertained a belief that the plaintiff was insane.

A careful perusal of the other instructions of the court and of the testimony given at the trial discloses that the only question of fact left for the determination of the jury under this instruction was embraced in the first clause thereof, *viz.*, whether the plaintiff was sane or insane from about March 31, 1924, to about and until July 15, 1924, these being the dates between which she was restrained of her liberty by the defendants. If that question had been determined against plaintiff's sanity, the jury must necessarily have returned a verdict in favor of the defendants on the first cause of action; since their verdict was for the plaintiff it necessarily follows that they must have determined that the plaintiff was sane during the period of time mentioned. If there was sufficient substantial evidence to warrant such a finding, then the right of the plaintiff under this instruction to have a verdict in her favor upon the first cause of action cannot be questioned, and we now proceed to an examination of that proposition.

The evidence showed without dispute that on October 29, 1918, the plaintiff was by order of a proper court in the state of Minnesota committed to the state hospital for the insane at St. Peter in that state. Dr. Baskett, superintendent of

that institution, testified at the trial that when the plaintiff was so committed her case was one of typical paranoia, a form of insanity, and that it was incurable. Plaintiff was detained in that institution until February 12, 1919, at which time she was released because of her nonresidence in Minnesota, and was by her divorced husband, J. A. Kelly, taken to and confined in the Wauwatosa Sanitarium at Milwaukee, an institution for the treatment of nervous and feeble-minded patients. Here she remained for a period of about two years, when she was transported to a similar institution near Milwaukee known as the Riverside Sanitarium, in which she was confined down to the thirty-first day of March, 1924, when she was seized by the defendants, transported to Montana, and confined in the Montana State Insane Asylum at Warm Springs.

As to the mental condition of the plaintiff during the five years and nearly two months which intervened between the date of her release from the Minnesota institution and the time when she was taken in custody by the defendants and placed in the Montana institution, the record is silent, except that plaintiff testified without objection that one of the physicians connected with the Riverside Sanitarium stated to her that he did not see anything wrong with her.

Following her admission to the Montana institution, plaintiff was subjected to various tests by the defendant Hathaway and his assistants for the purpose of determining whether she was sane or insane, and as a result of this investigation Dr. Hathaway declared that it was his judgment and opinion, which was concurred in by the other members of the medical staff of his institution, that the plaintiff was insane; that the form of insanity with which she was afflicted was that of a pronounced typical paranoiac. He also testified that her mental condition was the same from the time she was received at this institution on April 3 until she left there on July 14, and that the last time he saw her she was a pronounced paranoiac.

On the other hand, it appears that on July 3, 1924, she was taken before Hon. George B. Winston, judge of the district court of Powell county, for the purpose of being examined as to her sanity, and while the record is not clear as to just what transpired at that examination, it does disclose that Judge Winston refused to commit her to the asylum as an insane person. Subsequently, and on July 14, by order of the defendant Hathaway, the plaintiff was taken before the judge of the district court of the fifteenth judicial district at Forsyth, where, upon a regular statutory inquisition, it was judicially determined that she was sane, and she was thereupon ordered released from custody.

Dr. Dan J. Donahue, who seems to have been eminently qualified as a witness, also testified that typical paranoia, or true paranoia, is an incurable condition; but he further testified that a few months after the plaintiff's release from the asylum at Warm Springs and her discharge from custody by order of the court at Forsyth, he made a thorough examination of her and stated that she was not then a paranoiac.

Counsel for appellants lay much stress on the wording of a telegram written by plaintiff during the time she was being transported across Montana by the defendant Kipp on her way from Milwaukee to Warm Springs as tending to show the plaintiff was then insane. This message contains many abbreviations, erasures and references, but these were explained to the jury by the plaintiff while she was on the witness-stand.

In passing upon the first proposition involved in instruction No. 19, the jury had before them the statements of all of these witnesses and of the document which is referred to. The testimony was conflicting. If the jury accepted the statement of the witnesses Dr. Baskett and Dr. Donahue that a case of typical paranoia was an incurable disease or condition, but also believed the further statement of Dr. Donahue that a few months after Dr. Hathaway had declared her case one of typical paranoia she was not a paranoiac, the conclusion neces-

sarily follows that Dr. Hathaway and the others were mistaken in their opinions and that she was not afflicted with paranoia, which is the only form of insanity that was attributed to her by them. The refusal of Judge Winston to commit her as an insane person, and the fact that she was judicially declared not to be an insane person at the inquisition held in the district court at Forsyth, would in a measure tend to fortify the conclusion of the jury.

The jurors were the sole judges of the weight to be given [2-4] to the testimony. They were not bound to decide in conformity with the declarations of any number of witnesses which did not produce conviction in their minds, against a lesser number which satisfied them. A verdict based upon evidence which from any point of view could have been accepted as credible by the jury is binding upon this court, even though it may appear inherently weak. (*Williams* v. *Thomas,* 58 Mont. 576, 194 Pac. 500.) The fact that on the evidence as presented to the appellate court it might have made a different finding is not sufficient to warrant disturbing a verdict which has been approved by the trial court in denying a new trial. (*Trogdon* v. *Hansen Sheep Co.,* 49 Mont. 1, 139 Pac. 792; *Bank of Commerce* v. *United States F. & G. Co.,* 58 Mont. 236, 194 Pac. 158.) The verdict of a jury will not be set aside on the ground of insufficiency of the evidence if there is any substantial evidence to support it. (*Harrington* v. *Mutual Life Ins. Co.,* 59 Mont. 261, 195 Pac. 1107.)

Upon the record presented we cannot say that the determination of the jury to the effect that the plaintiff was not an [5] insane person between the dates mentioned was not supported by the evidence, and that it was contrary to the law as given them in the court's instruction No. 19. Since the jury determined this issue in favor of the plaintiff, it follows that she was entitled to a verdict and judgment in her favor in some amount under the theory of that instruction.

2 and 3.  Counsel's next contention is that the amount of the verdict is excessive—so excessive as to make it manifest that it was the result of passion and prejudice, rather than calm deliberation, and for this reason it should not be allowed to stand.

In cases like this it is manifestly impossible to find any fixed standard by which to measure the compensation to be allowed. [6]  In the case of *White* v. *Chicago etc. R. Co.*, 49 Mont. 419, 143 Pac. 561, which was an action for personal injuries sustained by plaintiff, this court said: ''So long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive.''  To the same effect see *Kirk* v. *Montana Transfer Co.*, 56 Mont. 292, 184 Pac. 987.

In view of the situation presented it does not seem necessary nor advisable for us to make reference to the testimony introduced in support of plaintiff's second cause of action, since its purport is clearly indicated by the admissions contained in the pleadings.  In the specifications of error it is alleged that the evidence was insufficient to justify the verdict upon the second cause of action, and that the verdict was against the law.  But no argument has been advanced in favor of either of these propositions; the argument was directed to the specification that the damages were excessive and appear to have been given under the influence of passion and prejudice. And upon this ground we content ourselves with saying that we can discover nothing in the record which raises a suspicion that the jury acted from prejudice, passion, partiality or other improper motives in making their assessment of damages on either cause of action, and, as the amount of their verdict met the approval of the learned district judge who tried the cause when he passed on defendant's motion for a

new trial, we do not feel warranted in disturbing their conclusion.

4. This was the second trial of this cause. Prior to the first trial, which was about nine months before the second, defendants made application for a continuance on account of the absence of two witnesses whose testimony was alleged to be material to their defense. In support of the application the defendant Hathaway filed an affidavit which, among other things, set forth his statement of what the absent witnesses would testify to if present. In order to avoid the continuance at that time, counsel for plaintiff admitted in open court that if the witnesses referred to were present at the trial and testified they would testify to the facts stated in the affidavit, subject to all legal objections and exceptions. Thereupon the application for continuance was denied, and at the trial the affidavit of defendant Hathaway was read to the jury. At the second trial counsel for defendants sought to read in evidence the aforesaid affidavit of the defendant Hathaway, as being evidence given at the former trial, but were not permitted to do so, and this is assigned as error.

In section 10531, Revised Codes of 1921, it is provided: "Evidence may be given upon a trial of the following facts: * * * 8. The testimony of a witness deceased, or out of the jurisdiction or unable to testify, given in a former action between the same parties, relating to the same matter." The affidavit of Dr. Hathaway was not evidence given at the former trial within the contemplation of that statute. It was merely his statement of what he expected to be able to prove by the two witnesses if they had been present at the trial and had testified therein. The authorities are uniform in holding that such an affidavit is not admissible as evidence upon a subsequent trial of the action. In *Ryan* v. *Beard's Heirs,* 74 Ala. 306, the court said: "When such admitted affidavit is used on the trial, to prevent the delay [on account] of which the admission is made—or if a continuance is otherwise had—

[77 Mont. 110.]

it can in no case be used in a subsequent trial, without the consent of opposing counsel. Its whole power and efficacy expired with the term at which it is given—with the trial it is intended to accelerate." And in *Padgett* v. *Moll,* 159 Mo. 143, 81 Am. St. Rep. 347, 52 L. R. A. 854, 60 S. W. 121, it is said: "The admission of a party * * * to obtain a present trial, does not stand for all time, but ceases when the emergency ceases." (See, also, *Cutler* v. *Cutler,* 130 N. C. 1, 89 Am. St. Rep. 854, 57 L. R. A. 209, 40 S. E. 687; *State* v. *Felter,* 32 Iowa, 49.)

We have given consideration to all of the errors assigned by counsel for defendants as grounds for reversal of the judgment in this case, and, as above indicated, have found them without merit.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and MATTHEWS and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.