UNITED STATES NATIONAL BANK OF RED LODGE,
RESPONDENT, *v.* CHAPPELL, APPELLANT.

(No. 5,547.)

(Submitted October 25, 1924. Decided November 24, 1924.)

[230 Pac. 1084.]

*Promissory Notes—Want of Consideration—Pleading — Written Agreement Absolving Maker from Liability—Valid Defense—Evidence—Admissibility—Contracts Constituting One Transaction—Construction—Principal and Agent—Ratification.*

Pleading—Facts, not Evidence, must be Stated.
1.   Good pleading requires a statement of the facts in ordinary and concise language, not a recital of the evidence of the facts.

Promissory Notes—Want of Consideration—General Averment Sufficient.
2.   In an action by the payee of a promissory note against the maker, defendant's general averment that the note "was executed without any consideration whatever and there was a total absence and failure of consideration" was sufficient without setting out the evidentiary facts upon which defendant relied.

Contracts in Writing—Parol Testimony—Admissible for What Purpose.
3.   Oral evidence which does not vary or contradict the terms of a written instrument but which serves to make plain the intention of the parties is admissible in an action on the instrument.

Promissory Notes—Agreement Absolving Maker from Liability—Valid Defense—Evidence—Admissibility.
4.   In an action by the payee of a promissory note against the maker, it was a valid defense that the note was delivered upon the condition that the maker should not be held liable thereon, pursuant to a written agreement between the parties, and in support of the plea evidence of the circumstances leading up to the making of the agreement and resulting in the delivery of the note, was admissible. (Par. 3, *supra.*)

Contracts Relating to Same Matter to be Taken Together.
5.   Several contracts relating to the same matter and made as parts of substantially the same transaction must be taken together for all purposes.

3.   Parol evidence to explain contracts, see notes in 6 **Am. Rep.** 678; 28 **Am. Rep.** 210.
4.   Power of bank officer to bind bank by agreement that liability of party to commercial paper shall not be enforced, see note in 28 **L. R. A.** (n. s.) 501.
5.   Construction of interdependent instruments, see note in 5 **Ann. Cas.** 149.

Principal and Agent—Act of Agent in Excess of Authority—When Principal Bound.

6. Where a principal accepts a contract made by his agent, he takes it as the agent made it and subject to all equities and defenses arising' out of the conditions thereof and sanctions the means and instrumentalities by which the agent procured it, even though the latter acted without authority or in excess of his powers.

Same—Principal by Accepting Benefit from Part of Transaction Ratifies Whole Thereof.

7. Where at the solicitation of the agent of a bank defendant executed a promissory note, transferred personal property as collateral, and then entered into a written agreement with the agent that the maker should not be held liable on the note, the three contracts constituted but a single transaction, by accepting the benefits flowing from a portion of which the bank, under `section 7941, Revised Codes of 1921, ratified the whole thereof and was not in a position to assert that in agreeing to relieve defendant from liability on the note the agent exceeded his authority.    (See rules above.)

*Appeal from District Court, Carbon County, in the Thirteenth Judicial District; W. L. Ford, Judge of the Fourteenth District, presiding.*

ACTION by the United States National Bank of Red Lodge against Grace Chappell. From a judgment for plaintiff, defendant appeals. Reversed and remanded for a new trial.

*Messrs. Shea & Wiggenhorn,* for Appellant, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

If a corporation, either intentionally or negligently, clothes a particular officer or agent with an apparent authority to act for it in a particular business or transaction, and persons deal with him in good faith, it will be bound to the same extent precisely as if such apparent authority were real. (3 Fletcher's Cyc. Corp. 3100 *et seq.*) It is true that Romersa was only the vice-president of plaintiff bank, but it is a well-known fact that in modern banking the vice-president is one of the most important executives of the bank—that he does not act only in the absence of the president. He is often entrusted with the management of the business of his company and he may bind the corporation the same as any other officer where it has been the custom of the corporation to give him broad powers' or vest

certain duties in him, and he may be the corporation's agent the same as any other officer or person. (*Id.,* p. 3245.) "Whenever an emergency exists calling for immediate action for the manifest interests of the bank, the officer has authority to do the act by necessity." (1 Morse on Banks and Banking, p. 192.) One who deals with an officer of a bank, innocently, has a right to assume that his official title as officer carries authority with it commensurate with that office. (*Id.,* p. 197; *Crystal Plate Glass Co.* v. *First Nat. Bank,* 6 Mont. 303, 12 Pac. 678.)

That it was intended by all of the parties that the note in question was not defendant's obligation, was not to be enforced and that it was a nullity cannot be questioned, but plaintiff seeks to escape the effect of what was intended by the techincal objection that a note cannot be repudiated by a contract contemporaneously entered into which is repugnant to the note, and that in any case the contract is not binding on the plaintiff without proof of express authority by resolution of its board of directors. We contend that the propositions involved in these technical objections are supported neither in sound reason or justice nor by the authorities. (*Spotton* v. *Dyer,* 42 Cal. App. 585, 184 Pac. 23; *National Bank of Kennett Square* v. *Shaw,* 218 Pa. St. 612, 67 Atl. 875; *Straus* v. *Citizens' State Bank,* 254 Ill. 185, 98 N. E. 245; *State Bank of Indiana* v. *Cook,* 125 Iowa, 111, 100 N. W. 72; *American Gas & Vent Co.* v. *Wood,* 90 Me. 516, 43 L. R. A. 449, 38 Atl. 548; *Jennings* v. *Todd,* 118 Mo. 296, 40 Am. St. Rep. 373, 24 S. W. 148; *Simmons* v. *Thompson,* 29 App. Div. 559, 51 N. Y. Supp. 1018; *Montgomery* v. *Hunt,* 99 Ga. 499, 27 S. E. 701; *Martin* v. *Monroe,* 107 Ga. 330, 33 S. E. 62; *First Nat. Bank* v. *Black,* 108 Ga. 538, 34 S. E. 143; *Monroe* v. *Martin,* 137 Ga. 262, 73 S. E. 341; *Allen* v. *Herrick Hardware Co.,* 55 Tex. Civ. 249, 118 S. W. 1157.)

"Where a principal accepts a contract made by the agent, he takes it as the agent made it, and subject to all equities and defenses arising out of the conditions thereof, and the

means and instrumentalities by which the agent procured it, even though the agent acted without authority or in excess of his powers." (2 C. J. 873; *Davis* v. *Danforth,* 65 Iowa, 601, 22 N. W. 889; *Davis* v. *Kneale,* 97 Mich. 72, 56 N. W. 220.)

*Mr. George W. Pierson* and *Mr. John G. Skinner,* for Respondent, submitted a brief; *Pierson* argued the cause orally.

The contract being in writing, consideration is presumed. (Rev. Codes, secs. 8431, 8432, 7512; *McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64.) A good consideration may consist of a benefit conferred or agreed to be conferred upon the promisor, or any prejudice suffered or agreed to be suffered. (*Id.,* sec. 7503; *Lindsay Brothers Co.* v. *Montgomery,* 68 Mont. 294, 216 Pac. 795.) In view of our definition of consideration, an answer that the promissory note was executed by defendant without any consideration, and there was a total absence and failure of consideration, without stating any fact does not state a defense.

Counsel says appellant was entitled to show the circumstances surrounding the execution of the note. She was permitted to do this, but the rule does not admit conversations as to terms covered by the contract or conversations about collateral matters. The execution of the contract superseded all oral negotiations or stipulations. (Rev. Codes, sec. 7520; *Western Loan & Savings Co.* v. *Smith,* 42 Mont. 442, 113 Pac. 475.)

Whatever the rule may be as to corporations generally, the law does not permit directors of banking corporations to delegate their powers, or avoid their duties, but holds them to account for their stewardship. The rule is that a president or cashier of a banking corporation, either singly or jointly is without authority to relieve one of his obligations to a bank, or enter into an arrangement at the time of the execution of the obligation, that it will not be enforced. (*State Bank of Moore* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.) 501, 108 Pac. 914; *First State Bank of Hilger* v. *Lang,* 55 Mont. 146,

9 A. L. R. 1139, 174 Pac. 597; *Bank of United States* v. *Dunn,* 6 Pet. (U. S.) 51, 8 L. Ed. 316 [see, also, Rose's U. S. Notes]; *Thompson* v. *McKee,* 5 Dak. 172, 37 N. W. 367; *United States* v. *City Bank of Columbus,* 21 How. (62 U. S.) 356, 16 L. Ed. 130 [see, also, Rose's U. S. Notes]; *Loomis* v. *Fay,* 24 Vt. 240; *Hodge's Exr.* v. *First Nat. Bank,* 22 Gratt. (Va.) 51; *German State Bank* v. *Watson,* 99 Kan. 686, 163 Pac. 637; *Gillis* v. *First Nat. Bank of Frederick,* 47 Okl. 411, 148 Pac. 994; *E. Swindell & Co.* v. *Bainbridge State Bank,* 3 Ga. App. 364, 60 S. E. 13; *First Nat. Bank* v. *Lennon,* 170 N. C. 10, 86 S. E. 715; *Olney* v. *Chadsey,* 7 R. I. 224; *Wheat* v. *Bank of Louisville,* 9 Ky. Law Rep. 738, 5 S. W. 305; *Rhodes* v. *Webb,* 24 Minn. 292; *Darby* v. *Farmers' State Bank of Burkburnett* (Tex. Civ.), 253 S. W. 341.)

If there is no issue of fact presented by the pleadings, there can be no trial. (*State ex rel. Culbertson Ferry Co.* v. *District Court,* 49 Mont. 595, 144 Pac. 159.) The execution of the note being admitted, a denial of the indebtedness raises no issue. (*Power* v. *Gum,* 6 Mont. 5, 9, 9 Pac. 575; *Stewart* v. *Budd,* 7 Mont. 573, 579, 19 Pac. 221; *Higgins* v. *Germaine,* 1 Mont. 230, 234; *Merrigan* v. *English,* 9 Mont. 113, 123, 5 L. R. A. 837, 22 Pac. 454.) The allegation of no consideration passing to plaintiff was a mere conclusion of law, neither was there an allegation that the respondent did not suffer prejudice. If the terms of a contract entered into on behalf of a corporation by its officers are extraordinary or unusual, the party contracting with the officers is put upon inquiry as to the authority. (Fletcher on Corporations, p. 3121.) Before the respondent could be bound the authority of the officer to execute the contract must be shown. (*Wagner* v. *St. Peter's Hospital,* 32 Mont. 206, 79 Pac. 1054; *Butte & Boston Consol. Mines Co.* v. *Montana Ore Purchasing Co.,* 21 Mont. 539, 55 Pac. 112; *Southern California Colony Assn.* v. *Bustamente,* 52 Cal. 192.) One who deals with an agent does so at his peril. (*Moore* v. *Skyles,* 33 Mont. 135, 114 Am. St. Rep. 801, 3 L. R. A. (n. s.) 136, 82 Pac. 799.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

This is an appeal by defendant from a judgment given
plaintiff, following a directed verdict.

From the proof admitted, and evidence offered which should
have been admitted, the facts are pretty clear. R. B. Chap-
pell, called Roy, was vice-president of the First State Bank of
Wibaux, hereafter called the Wibaux bank. As such officer he
negotiated two promissory notes aggregating $13,150 to the
United States National Bank of Red Lodge, hereafter called
the Red Lodge bank. These notes were forged, and by Roy
Chappell it seems. The indorsement upon them by the
Wibaux bank was without recourse, but unrestricted as to
Chappell himself. The Wibaux bank closed its doors and
shortly following that event Roy Chappell put in appearance
at Red Lodge. Immediately thereafter he returned to Wibaux,
accompanied by John Romersa, vice-president of the Red
Lodge bank. Romersa had been connected with that bank as
cashier ever since its founding in 1910, until January, 1921,
when he was made vice-president. He was succeeded as
cashier by H. P. Cassidy, who from 1911 had been assistant
cashier.

Apparently, Romersa took the forged notes with him. How
he learned the notes were forged does not appear but shortly
after reaching Wibaux Romersa sought out the defendant,
Mrs. Chappell, mother of Roy Chappell, and told her something
would have to be done or ''they'' would prosecute her son.
Mrs. Chappell called her brother, Henry Mullendore, and her
two other sons, J. R., or Rex, and W. B. Chappell, all from
distant places, to her aid. These three arrived and took charge
of the negotiations for her. Romersa in turn telephoned Cas-
sidy to send to Wibaux John G. Skinner, Esq., a gentleman
who had been attorney for the Red Lodge bank for many
years. Mr. Cassidy told Mr. Larkin, president of the bank,
of the telephone conversation and the result was that Mr.

[71 Mont. 553.]

Skinner was dispatched to Wibaux without delay. In the meantime conferences went on between Romersa and those representing Mrs. Chappell. Romersa said to Mullendore and W. B. Chappell that the bank was loser $13,150 on the forged notes and the loss would have to be made good by the mother of Roy Chappell, or some other, or the bank would cause Roy to be prosecuted criminally. After the arrival of Mr. Skinner a number of conversations took place between Romersa and Skinner, representing their bank, and Mullendore, Rex and W. B. Chappell, representing the defendant. Romersa and Skinner were negotiating with Roy Chappell also. In addition to the threat made by Romersa that unless the forged notes were made good the forgeries would be exposed and Roy Chappell prosecuted, it was represented to Mullendore and the Chappells that in case of a settlement "they would keep the thing quiet, keep it from the public." After conferring repeatedly, those representing the defendant told Romersa and Skinner that Mrs. Chappell would give the Red Lodge bank in settlement sixty shares of corporate stock in the Wibaux Realty Company, and nothing more. At this point Messrs. Romersa and Skinner retired from the room in which the conference was then being held, but returned shortly saying that while the offer was acceptable, together with such other property and collateral as Roy Chappell himself had agreed to turn over— constituting all of his available property and assets—the bank would not be able to accept the transfer of the stock in the form proposed, but that in order to meet the requirements of the banking department, the bank would have to have a note with the stock as collateral (whether such representation was correct or incorrect is not material to this inquiry) ; Mullendore and the two sons refused to permit the defendant to execute a note but Romersa and Skinner said it would be a mere form and Mrs. Chappell would not have to pay it. As an assurance of this assertion Mr. Romersa wrote on a typewriter at the dictation of Mr. Skinner an agreement which, after some

amendment, was signed by Romersa for the Red Lodge bank, and which reads as follows:

"Wibaux, Montana, December 13, 1921.

"Received of Grace Chappell certificate of stock numbered six for sixty shares of the Wibaux Realty Company of Wibaux, Montana; also one note for $7,150.00 of even date due on demand payable to the undersigned; it is understood and agreed that this note is received and said certificate is also received by it as a part settlement of two certain notes amounting to $13,150.00 which were indorsed with recourse by R. B. Chappell and upon which the said R. B. Chappell was and is personally responsible and liable; that it is understood and agreed that said note for $7,150.00 shall be paid by the said R. B. Chappell and that in the event that he fails to pay the same, or any renewal thereof when due, that said certificate of stock immediately becomes the property of said bank and that said note or any renewal thereof shall immediately become the property of the said Grace Chappell. It being understood that said Grace Chappell was not personally liable or responsible for the two notes amounting to $13,150.00 as above described.

"THE UNITED STATES NATIONAL BANK OF RED LODGE, MONTANA,

"By JOHN ROMERSA, Vice-President."

After Romersa had executed the agreement Mr. Skinner and he prepared a note which was to become due in a year from date. To this Rex Chappell objected, being fearful that if the note should be indorsed before maturity in good faith and for value his mother would not have any defense to it. He insisted that the note should be made due on demand so that the Red Lodge bank could not transfer it to an innocent party free of such defenses as his mother might interpose. To this Romersa and Skinner finally agreed. The defendant signed the note and indorsed the stock and delivered the same to Romersa, and he gave her the agreement. Contemporaneously

with these acts, Roy Chappell and his wife executed a demand note to the Red Lodge bank for the sum of $13,150, to bear interest at the rate of eight per cent per annum from date until paid, and they also gave over to Romersa as collateral security for the payment of this note diamonds belonging to Mrs. Roy Chappell, household furniture and promissory notes, which were made payable to Roy Chappell and by him were indorsed to the Red Lodge bank. Romersa then surrendered the forged notes, to whom it does not appear, but this is not material for it has nothing to do with defendant's liability upon the note in suit.

When Romersa returned to his bank, instead of placing the $13,150 note signed by Roy Chappell and wife, with the "assets of the bank," he placed it in the "collateral pouch." The Wibaux Realty Company stock and defendant's note he put with the "assets."

All this happened in December, 1921. In the following June, 1922, Romersa took the certificate for the Wibaux Realty stock to Wibaux, where he had a new certificate therefor made out in the name of the Red Lodge bank. In July following the Wibaux Realty Company declared a five per cent dividend, and the defendant, who was then secretary of the company, sent a dividend check for $300 to the Red Lodge bank. In the meantime Romersa sold the diamonds and furniture and made some collections from the notes which Roy Chappell had turned over as collateral; the amounts received were credited, not upon the note of Roy Chappell, but upon the note of this defendant. Romersa severed his connection with the bank in November, 1922.

Thus matters stood until the Red Lodge bank made demand upon the defendant for the payment of the $7,150 note. Mr. Larkin, president of the bank, testified that he did not know anything about the agreement drawn up by Messrs. Skinner and Romersa and signed by Romersa for the bank at the time the defendant's note was obtained, until about January 23, 1923, when he received a letter from Rex Chappell calling

71 Mont.—36

attention to the agreement and in behalf of his mother refusing to give a renewal of the note; but with knowledge of the facts on the part of Larkin this suit was commenced June 9, 1923.

The complaint sets forth the $7,150 note *in haec verba,* and is in the ordinary form. The defendant demurred, then answered and later filed an amended answer. After certain admissions and denials, which are not necessary to be noted here, the defendant set up three separate defenses, the first being that the promissory note "was executed by the defendant without any consideration whatsoever and there was a total absence and failure of consideration"; the second, setting forth that the defendant was induced to execute the note upon the representation and promise of the plaintiff and its agents that the note would not be enforced against her and that she would not be required to pay the same, and that she received nothing of value for it, that prior to the execution of the note she was the owner and holder of sixty shares of the capital stock of the Wibaux Realty Company of the par value of $6,000, and that before the execution of the note and on the thirteenth day of December, 1921, the plaintiff solicited her to transfer and convey the said stock to the plaintiff for the debt of another and plaintiff prevailed upon the defendant to consent thereto and that at the same time the plaintiff and its agents, acting for it and in its behalf, represented to her that the stock could not legally and properly be transferred to the plaintiff by absolute transfer or assignment but that it would be necessary that some form be gone through whereby it would appear that the capital stock was transferred as collateral security to a promissory note; that the plaintiff thereupon and under the promise that the promissory note was a mere form and would not be effective, induced and prevailed upon the defendant to execute the promissory note set out in plaintiff's complaint and to transfer the certificate of stock by assignment to the plaintiff in the form of collateral security to the promissory note, with the understanding that by the execution of the note the defendant would incur no obligation or liability whatso-

ever; that upon the default in the payment of the note the same would be canceled, surrendered and returned to the defendant and the plaintiff would thereby acquire title to the capital stock. The defendant then alleged the execution of the agreement, a copy of which was attached to the answer as Exhibit "A." She alleged that she never was indebted to the plaintiff at any time and the capital stock, as well as the promissory note, were given to the plaintiff by her without receiving anything of value whatsoever; that the plaintiff retained the capital stock, and still holds the same, and has never surrendered the promissory note.

The third defense it is unnecessary to notice now. The plaintiff replied by what amounts to a general denial.

The determinative questions in the case are: (1) Whether the defendant has sufficiently pleaded her defense that the note was executed and delivered by her without consideration; (2) whether it was permissible for the defendant to give evidence of the surrounding facts and circumstances which led up to the transfer of the stock and the execution of the note; (3) whether the agreement executed to the defendant by the agent of the bank, purporting to absolve her from liability on the note was admissible in evidence and binding upon the plaintiff without proof of express authority on part of the agent to execute it.

1. Under the statute absence of consideration is a matter
[1, 2]   of defense as against any person not a holder in due course. (Sec. 8435, Rev. Codes 1921.) This is an affirmative defense, and must be pleaded. While there is some division of opinion we think the decided weight of authority sustains the position that a general averment is sufficient in pleading want of consideration without setting out the evidentiary facts upon which the pleader relies. Good pleading requires the statement of the facts, not the evidence of the facts, in ordinary and concise language. The design of the rule is to arrive at a simple and direct statement of the issue to be submitted to the court for decision.

The ultimate fact stated in the first affirmative defense is that the note was executed without any consideration—that there was a total absence of consideration. What more need be said? As the supreme court of Oklahoma observed in *Zebold* v. *Hurst*, 65 Okl. 248, L. R. A. 1917F, 579, 166 Pac. 99: "Express it in as many sentences and in as many forms as the mind can conceive, it conveys but one idea to the understanding; that is, that the defendant received nothing from the plaintiff in exchange for the note. It may seem brief and insignificant, yet it is a complete bar to the plaintiff's recovery."

"It is not, as is suggested by counsel, a conclusion, but a fact, which the plea avers as the matter of defense; a fact of which the defendant must make proof." (*Kolsky* v. *Enslen*, 103 Ala. 97, 15 South. 558.)

In *Miller* v. *Brumbaugh*, 7 Kan. 343, Mr. Justice Brewer, speaking for the court, said: "The answer denies that value was received; an affirmation that it was without value is equivalent to a denial that it was with consideration. This affirmance and denial make an issue. It is complete. * * * The parties were satisfied with the issues as made. They went to trial upon them. Under that general averment, the defendant could offer any fact which tended to prove that the note was given without consideration, and the plaintiff, on the other hand, could show any consideration. (*Chamberlain* v. *Painesville & H. R. R. Co.*, 15 Ohio St. 225; *Wheeler* v. *Billings*, 38 N. Y. 263.)" (And see *Fisher* v. *Fisher*, 113 Ind. 474, 15 N. E. 832; *Honeyman* v. *Jarvis*, 64 Ill. 366; *Sheldon* v. *Lewis*, 97 Ill. 640; *Foren* v. *Dealey*, 4 Or. 92; Sutherland on Pleading, sec. 520.)

And in *Rivera* v. *Cappa*, 29 Cal. App. 496, 156 Pac. 1016, 1017, the court, on rehearing, explained the meaning of the early case of *Gushee* v. *Leavitt*, 5 Cal. 160, 63 Am. Dec. 116, saying: "The court in that case was unfortunate in its mode of expression. In view of the well-established rule that an answer which avers, in so many words, that the note sued on

was executed without any consideration whatever, states a good defense (9 Cyc. 738), it is hardly to be supposed that the court there intended to decide the contrary.''

As noted above the plaintiff replied to the first affirmative defense by general denial, and apparently was satisfied with the issue thus made.

But if it should be conceded that the plaintiff was not apprised of the facts upon which the defendant intended to rely by the allegations of the first defense, no such argument may be urged against the second. The second pleads want of consideration in amplified form. There is nothing in the point that defendant by alleging she transferred the stock for the debt of another nullified her defense of want of consideration; her allegation is concerning the transfer of the stock, not the execution of the note; as to the latter her pleading is unequivocally to the effect that she executed and delivered the note with the understanding that it was a mere form which imposed upon her ''no obligation or liability whatever.''

2. In *State Bank of Moore* v. *Forsyth*, 41 Mont. 249, 28 [3, 4]  L. R. A. (n. s.) 501, 108 Pac. 914, this court held it was a valid defense to the enforcement of a promissory note against the maker by the party to whom it was delivered that the note was without consideration and was delivered upon the condition that the maker should not be held liable thereon, following *Higgins* v. *Ridgway*, 153 N. Y. 130, 47 N. E. 32, and citing many cases. (And see *National Bank of Kennett Square* v. *Shaw*, 218 Pa. 612, 67 Atl. 875; *Straus* v. *Citizens' State Bank*, 254 Ill. 185, 98 N. E. 245.) But the trial court took the position that under the pleadings the circumstances surrounding the transfer of the stock, the making of the note, and the execution by the bank's agent of the agreement protecting the defendant against the note, were incompetent and irrelevant as tending to vary the terms of a written instrument. Just what written instrument was referred to is not clear. As will be adverted to later the series of acts mentioned constitute one transaction. We think the court must

have overlooked sections 7527, 7538 and 10521, Revised Codes of 1921, which provide that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. We do not see how the court or jury could have passed upon the matters in issue understandingly without information of the facts and circumstances which led up to and were a part of the transaction which ended in the defendant's giving to the bank the realty stock of the value of $6,000, and the note in suit. And it is difficult to figure out how a defendant may prove want of consideration without being permitted to give testimony in support of the plea. In the absence of a writing oral testimony is admissible, of course. If there be a writing, oral testimony which does not tend to vary or contradict its terms but which serves to make plain the intention of the parties is admissible.

It was the contention of the defendant that the stock was to become the absolute property of the bank but that she was not to be held personally liable upon the note. The court first permitted in evidence the written agreement which was executed in the name of the bank by Romersa, shut out competent evidence tending to prove the defense of want of consideration—which did not tend to vary or contradict in any way the terms of the agreement but rather served to explain it—and then upon the motion of plaintiff rejected the agreement utterly. So the defendant was without much essential testimony, both oral and written.

3. It is fair to say that the learned trial judge instructed the jury to return a verdict for the plaintiff against his personal views, which he said were in accordance with the defendant's theory, but he felt constrained to take the action he did because of his interpretation of the law as laid down by this court in *State Bank of Moore* v. *Forsyth, supra,* and *First State Bank of Hilger* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597. It is clear that in taking the view he did he misconceived the doctrine of those cases and thus fell into

error.   The facts in each case are widely dissimilar from those
in the instant case.

In the *Forsyth Case* one Thurston was indebted to the bank
of which he was cashier.  At Thurston's solicitation, and for
his accommodation, Forsyth executed to the bank a note for
$1,500 upon Thurston's promise that he, Forsyth, would not
be held liable on the note.  The bank parted with value to the
amount of the note.  The circumstances were such that it ap-
peared to the court that Forsyth knowingly participated with
Thurston in a scheme to deceive the bank examiner and de-
fraud the creditors and stockholders of the bank.  The promise
that Forsyth would not be held liable on the note was the
personal promise of the cashier, who was acting for himself,
not for his bank, but to the bank's detriment, which Forsyth
must have known.  "Thurston was engaged in a palpable at-
tempt to defraud the bank of which he was cashier, and the
defendant by his acts made it possible for him to consummate
the fraud."  The court held, correctly, that Thurston's prom-
ise was beyond the scope of his authority and Forsyth had put
himself in a position where he could not dispute his liability
upon the note.  Whether the bank parted with value in this
case is doubtful to say the least; Roy Chappell's new note,
given instead of the forged ones, carrying collateral which the
forged notes did not, was certainly as good as were the forged
notes, which were valid as to him only.  The defendant here,
innocent of wrong, was giving value for inaction and silence.
None of the reasons which stopped the mouth of Forsyth con-
fronted her upon her defense.

In the *Lang Case* it was held that the cashier of the bank
did not have any authority to release Lang, president of the
bank, without payment, from his liability upon a note Lang
had executed to the bank.  The court said: "Neither the presi-
dent, the cashier, nor both of them, could release a debtor of
the bank from his liability, without authority from the board
of directors (1 Michie on Banks & Banking, p. 706), and the
president will not be heard to say that he was released of his

liability, in the absence of clear and convincing proof that the board intended to clothe the cashier with that extraordinary power.'' Certainly, no one will deny the correctness of that statement, but it has no application to the instant case. Mrs. Chappell was not a debtor of the bank and was not under any obligation to it. The cold fact is that the bank's agent by appealing to defendant's maternal instinct and family pride caused her to give the bank the full value of $6,000 in order to ward off from her son the stigma of felony and from herself and children consequent disgrace.

There cannot be any question that the making of the [5-7] promissory note, the transfer of the stock, and the execution of the agreement were parts of one transaction. The statute says that several contracts relating to the same matter, and made as parts of substantially one transaction, are to be taken together. (Sec. 7533, Rev. Codes 1921. And see *Talbott* v. *Heinze,* 25 Mont. 4, 63 Pac. 624, *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, *Bartels* v. *Davis,* 34 Mont. 285, 85 Pac. 1027, *Dodd.* v. *Vucovich,* 38 Mont. 188, 99 Pac. 296, and *Spotton* v. *Dyer,* 42 Cal. App. 585, 184 Pac. 23; 8 C. J. 196, 197.) And, as the parts of this transaction are to be taken together, they must be considered together for all purposes. (*Union Bank & Trust Co.* v. *Himmelbauer,* 56 Mont. 82, 181 Pac. 332.) So to all intents and purposes they are indivisible in this case. This transaction was the fruit of the doings of plaintiff's agent, Romersa. But plaintiff insists that he was without authority to release the obligation upon which Roy Chappell was bound; that Romersa did not have the authority to receive anything but money for the forged notes indorsed by Chappell (*First State Bank of Hilger* v. *Lang, supra*); that Romersa did not have any authority to execute the written agreement; and it insists that it did not ratify his action in so doing; anyhow it insists that it did not ratify his act as to the written agreement.

A great deal is said by respective counsel in the briefs as to Romersa's authority, actual or ostensible, but we are not

disposed to enter upon this controversial ground. The statute declares "ratification of part of an indivisible transaction is a ratification of the whole." (Sec. 7941, Rev. Codes 1921.) Now, the plaintiff must either ratify this transaction in whole or reject it in whole. It must take the bad with the good; it will not be permitted to blow both hot and cold. As under the Scots law it will not be permitted at the same time to approbate and reprobate. If plaintiff intends to retain the advantageous part of this indivisible contract it will be compelled to maintain the disadvantageous part of it. Hence the apt question: "Where did Romersa's authority start and where did it stop?" If he had authority to collect money only for the forged notes, then he did not have authority to accept the realty stock. If he did have authority to accept the realty stock and the bank intends to be bound by what he did in that respect, then it must be held that he had authority to execute the agreement whereby he got it.

"Where a principal accepts a contract made by the agent, he takes it as the agent made it and subject to all equities and defenses arising out of the conditions thereof, and the means and instrumentalities by which the agent procured it, even though the agent acted without authority or in excess of his powers." (2 C. J. 873; *Davis* v. *Danforth,* 65 Iowa, 601, 22 N. W. 889.)

It follows that the court not only rejected competent and relevant testimony but erred in directing a verdict for plaintiff. The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES RANKIN and STARK concur.

ASSOCIATE JUSTICES HOLLOWAY and GALEN, being absent, did not hear the argument, and take no part in the foregoing decision.