ADAMCZIK ET AL., APPELLANTS, *v.* McCAULEY ET AL., RESPONDENTS.

(No. 6,689.)

(Submitted December 12, 1930. Decided January 22, 1931.)

[297 Pac. 486.]

*Mr. C. J. Christian* and *Mr. H. A. Tyvand,* for Appellants, submitted a brief; *Mr. Christian* argued the cause orally.

30

*Mr. H. Lowndes Maury* and *Mr. R. Lewis Brown,* for Respondents, submitted a brief; *Mr. Brown* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This controversy grew out of a state of facts which may be stated briefly as follows: Lee McCauley and Reka H. McCauley, his wife, lived on a farm, which was reasonably well equipped with machinery and work animals, near Melrose in Silver Bow county. By reason of failing health McCauley was not able to work on the farm. Mrs. McCauley thought that by moving to Butte she could acquire an apartment house and thus support her husband and two minor children. Following out this idea, on February 14, 1927, she entered into a contract with the plaintiffs whereby she agreed to purchase from them, and they agreed to sell to her, a house containing twelve apartments and a storeroom, in which a grocery was being conducted. The sale was to include all furniture in the building, the store fixtures, and the stock of goods, wares and mer-

chandise, consisting of groceries and the like. The purchase price of the entire property was $13,663.32, which Mrs. McCauley agreed to pay as follows: $2,500 upon the signing of the agreement, and $175 per month, payable on the fourteenth day of each month, to be credited upon the principal of the purchase price; all deferred payments to bear interest at the rate of eight per cent per annum until paid. As Mrs. McCauley was unable to make the first payment of $2,500 in cash, the contract provided that plaintiffs would accept in lieu thereof the promissory note of herself and husband, due five years after date, with interest at the rate of eight per cent per annum, secured by a mortgage upon the ranch, and upon some mining claims, together with a chattel mortgage upon the ranch machinery and work-stock. Contemporaneously with the execution of the contract, the note and mortgages were executed and delivered. By the terms of the contract Mrs. McCauley assumed and agreed to pay a mortgage of $3,500 upon the apartment house property, and also the taxes upon that property commencing with the year 1927. The plaintiffs agreed to place a deed for the apartment house property, and a bill of sale for the furniture and fixtures, in escrow in the First National Bank of Butte, to be delivered to Mrs. McCauley when she had complied with her contract in all respects. Time was expressly made of the essence of the agreement. It was agreed that if Mrs. McCauley should make default in the payment of the promissory note, or in the payment of any monthly installment of $175 when due, or if she should fail to keep the premises insured against loss by fire, or fail to pay the taxes, or fail to keep and perform any of the covenants, terms or conditions of the contract, the plaintiffs might, at their option, declare the agreement void, and retain all payments made by defendants, including the note.

The evidence indicates that when Mrs. McCauley took over the property which she agreed to purchase, which was immediately after the papers were signed, all the apartments were rented, and the grocery store was in a flourishing condition.

Neither she nor her husband had ever had any experience in conducting an apartment house or a grocery store. Soon all the tenants but one moved out, and the grocery business, which had yielded $260 per month profit, according to the testimony of Mrs. Adamczik, by July 14 had gotten down to almost nothing, and the stock was greatly depleted. Mrs. Adamczik, seeing the condition of affairs, about the middle of July, offered to take charge of the grocery store to help out Mrs. McCauley, but insisted that the rent, then in arrears, with the payment due August 14, 1927, must be paid on that day, but when the day arrived Mrs. McCauley was unable to pay the rental, and on the next day Mrs. Adamczik demanded possession of the apartment house and Mrs. McCauley gave her the keys thereto. Mrs. McCauley, with her family, remained in one apartment until September 4, 1927, when they moved out. Shortly after August 15 Mrs. Adamczik, who seems to have been the prime mover on part of the plaintiffs, notified the bank—so a representative of that institution testified—not to receive any payments on the purchase price, and she demanded the documents which were in escrow.

On May 25, 1929, the plaintiffs commenced this action to foreclose the real and chattel mortgages. Mr. and Mrs. McCauley were made defendants. The complaint is in the usual form in such action. By answer defendants admitted the execution of the mortgages but alleged that the consideration for the promissory note, which the mortgages were given to secure, had failed prior to the institution of the action. For an affirmative defense and cross-complaint they set up the contract of February 14, 1927, the making of certain payments as required by the terms thereof, and that Mrs. McCauley was unable to and did not pay the sum of $175 on the purchase price of the property due August 14, 1927, and that upon that day the plaintiffs took possession of the property; that on or before the ninth day of September, 1927, Mrs. McCauley, being still in default of the monthly payment due August 14, 1927, and being unable to pay the same, plaintiffs notified her that

the contract was null and void and that they elected to and did terminate, cancel and forfeit the same and all of defendants' right, title and interest thereunder, including all payments made by defendants on the purchase price of the property, and demanded of Mrs. McCauley that she return all of the property which plaintiffs had agreed to sell to her under the contract, and thereupon, and in pursuance of the demand, she did turn over and deliver to the plaintiffs all of the property of which she then had possession, undiminished in value. It was alleged that the payments Mrs. McCauley had made were more than sufficient to compensate plaintiffs for the value of the use and occupation of the property during the time she was in possession thereof. Plaintiffs' reply put defendants' affirmative allegations in issue.

The court found that Mrs. McCauley paid on the purchase price of the property $450, on indebtedness against the stock of merchandise, $273.87, on the assumed mortgage, $183.30, and on August 5 received credit on groceries returned to plaintiffs amounting to $431.50, making in all $1,338.67; that Mrs. McCauley was not able to comply with her contract but defaulted in the payment of the two monthly installments falling due thereunder, beginning with May 14, 1927, and continuing thereafter, "and that such failure and default on her part was not due to any grossly negligent, wilful or fraudulent breach of duty"; that on or about the 15th of August, 1927, the plaintiffs canceled and declared void the contract of sale and declared forfeited Mrs. McCauley's rights thereunder and retained the payments made by her as well as the promissory note and mortgages, and demanded and received possession of the remainder of the property covered by the contract of sale; that Mrs. McCauley surrendered all of the property in the same condition as when received by her, except that the grocery stock had been depleted in value in the sum of $556.50; that the reasonable value of the use and occupation of the property was $125 per month, or $750 in all, making a total to be charged against Mrs. McCauley of $1,306.50; that prior to the trial of this action the plaintiffs had by contract in

writing, which was still in force, agreed to sell the property, which theretofore they had agreed to sell Mrs. McCauley, to a third person, and had placed in escrow conveyances of the property to the third person, to be delivered upon his complying with the terms of the contract. The court concluded that Mrs. McCauley was entitled to be relieved from the forfeiture incurred by her and that neither she nor her husband were liable upon the promissory note, and were entitled to have the same surrendered up to be canceled by the clerk of the court, and provided for a cancellation of the mortgages upon the records of the county. Thereupon a judgment and decree were entered from which the plaintiffs have appealed.

1. It is contended in behalf of the plaintiffs that their acceptance of the note and mortgages in place of the cash payment of $2,500 which Mrs. McCauley was required to make under the contract, was the acceptance and substitution of a new and valid obligation in place of an existing obligation, which both parties intended should be a new and separate contract. In other words, a novation is relied upon. This position is not tenable. The case was not tried upon that theory below, and it is not sustained by pleading (*Bose* v. *Sullivan*, 87 Mont. 476, 288 Pac. 614) or proof. The fact is that the note, secured by the mortgages, was a part of the purchase price. All the documents signed by the parties were parts of one transaction, and all are to be considered together. (Sec. 7533, Rev. Codes 1921; *United States National Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084; *Cooper* v. *Goble*, 77 Mont. 580, 252 Pac. 362.)

2. When Mrs. McCauley breached the contract by failing to make the stipulated installments on the purchase price the plaintiffs had a choice of remedies. They chose to demand and take possession of the property which was the subject of the contract, and to declare the contract at an end, retaining the payments which Mrs. McCauley had made thereon. They did not see fit to bring suit to enforce the forfeiture and to claim damages on account thereof. This is not such an action. When plaintiffs disaffirmed the contract they put it beyond

their power later to benefit themselves by attempting to affirm it. They could not repudiate it and at the same time rely upon it. The remedy of the vendor by way of cancellation of a contract and the continued liability of the purchaser for the purchase money, whether past due or not, are totally inconsistent, as we said in *Edwards* v. *Muri,* 73 Mont. 339, 237 Pac. 209, quoting 27 R. C. L. 666, and citing *DeYoung* v. *Benepe,* 55 Mont. 306, 176 Pac. 609. (And see Williston on Contracts, sec. 791; *Portner* v. *Tanner,* 30 Wyo. 85, 30 A. L. R. 624, 216 Pac. 1069; *Glassell* v. *Coleman,* 94 Cal. 260, 29 Pac. 508; *Waite* v. *Stanley,* 88 Vt. 407, L. R. A. 1916C, 886, 92 Atl. 633; *First National Bank* v. *Larson,* 53 S. D. 262, 68 A. L. R. 940, 220 N. W. 506; *Kunz* v. *Whitney,* 167 Wis. 446, 167 N. W. 747; *First National Bank* v. *Le Barron,* 201 Iowa, 853, 208 N. W. 364.)

It makes no difference that the contract provided the note might be forfeited in case of the breach of the contract by the vendee. When plaintiffs put an end to the contract, thus releasing themselves from any obligation to convey the land to Mrs. McCauley (whereupon they agreed to convey it to another), they released Mrs. McCauley from her obligation to make any further payment upon the purchase price, and from her promise to make payment,—and the promissory note was that and nothing more than that. Mrs. McCauley is not here asking for a return of payments made by her. She is simply defending against a suit brought to recover a portion of the purchase price pursuant to a contract which no longer exists and with which the vendors are no longer able to comply.

3. As the plaintiffs cannot recover against Mrs. McCauley, neither can they against her husband, an accommodation maker of the note.

4. Were it to be conceded that the pleading interposed by the defendants does not justify the finding that Mrs. McCauley's "failure and default were not due to any grossly negligent, wilful or fraudulent breach of duty on her part," still we think there is sufficient competent evidence to sustain the essen-

tial findings of the court upon which the decree is based, and this is so even if it were to be conceded that the court erred in ruling upon bits of testimony.

It will be presumed that the court disregarded testimony improperly admitted unless the findings demonstrate the contrary. Upon the whole case we see no reason compelling us to interfere with the decree.

The judgment is affirmed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.

Rehearing denied March 26, 1931, ASSOCIATE JUSTICES FORD and ANGSTMAN dissenting.