690 P.2d 1013

**Bruce KEITH, Plaintiff-Appellant,**

**Robert W. Weig and Marcella G. Weig, Plaintiffs,**

.v.

**Robert BOWERS, a single man, Chris G. Catsavis and Kathryn Catsavis, his wife, Defendants-Appellees.**

**No. 15448.**

Supreme Court of New Mexico.

Oct. 30, 1984.

Bruce Keith, Albuquerque, pro se.

Duane F. Keating, Mercer, Lock & Keating, Albuquerque, for defendants-appellees.

## OPINION

FEDERICI, Chief Justice.

This case is before us on appeal from the District Court of Bernalillo County. Bruce Keith, the plaintiff-appellant (plaintiff), brought suit to collect on two promissory notes, and to foreclose on an assignment of an owner's interest in a real estate contract, which was given as security for the two notes. Robert Bowers, the defendant-appellee (defendant), counterclaimed for interference with contract. After discovery both parties moved for summary judgment and the trial court granted partial summary judgment to each, dismissing both the complaint and counterclaim with prejudice. Plaintiff appealed the dismissal of the complaint. We affirm.

The question is whether the payee of promissory notes, which were given as partial consideration for real estate, can enforce payment on the notes even though he can no longer deliver title to the real estate that he promised to the payor. Plaintiff argues that in this case he is still entitled to payment on the notes even though he cannot fulfill his own obligation under his real estate contract with defendant because the notes represent an absolute, existing obligation, somewhat analogous to a cash downpayment which, once paid, cannot be regained by the payor even if the contract fails. The trial court concluded that the notes in this case do not represent an absolute obligation, but were merely incident to the underlying real estate contract and represented an obligation to pay over time

only as long as that contract remained in effect.

The transaction between plaintiff and defendant was complicated, but for our purposes it is sufficient to describe it as follows. The initial agreement called for plaintiff to transfer to defendant a mobile home park. In exchange, defendant would transfer to plaintiff two houses, and his owner's interest in a real estate contract by which he had sold property to defendants Chris and Kathryn Catsavis (Catsavis contract). In addition, the transaction was a "wraparound" deal, whereby defendant was to assume payments that were being made, through an escrow agent, to a chain of previous owners of the mobile home park. The total consideration for the mobile home park was $415,565.75, of which approximately $72,000 was agreed by the parties to be defendant's equity, for exchange purposes, in the two houses, and $65,000 was the then face value of defendant's interest in the Catsavis contract. The remainder was the amount of the payments to be assumed by defendant. There was no cash down payment.

Subsequently, for his own income tax purposes, defendant decided that he did not want to transfer his interest in the Catsavis contract, but would rather give plaintiff two promissory notes, each for $32,500, which would both be secured by his owner's interest in the Catsavis contract. Plaintiff agreed to this change. The parties then executed the real estate contract, the two promissory notes, and the security assignment in August 1980. The contract was a standard form real estate contract, and plaintiff, a lawyer who practices real estate law, filled out the form. In the space provided in the form to specify the consideration being given by the buyer, plaintiff simply listed the secured promissory notes along with the other consideration, with no indication that the notes were intended as a deposit or down payment.

Defendant made the monthly payments to the escrow agent and the monthly payments on the promissory notes, which went directly to plaintiff, for almost a year. In June 1981, defendant sold the mobile home park to Harold S. Hoffman and his wife. This was another "wraparound" transaction, with the Hoffmans assuming both the payments that were being made through the escrow agent to the prior owners of the mobile home park, and the payments on the promissory notes that were being made to plaintiff. Meanwhile, in a further complication, Benjamin C. Platt and his wife, who had owned the mobile home park immediately prior to plaintiff and had sold it to plaintiff, assigned their rights in their contract with plaintiff to Ben Ruiz.

This arrangement began to sour in July 1981, when the Hoffmans fell behind in their payments. Beginning later that month plaintiff periodically sent default notices to defendant, notifying defendant of default on the promissory notes and on the real estate contract. Defendant did not make the payments, however, and by early February 1982, the note and contract payments for December 1981, and January and February 1982, were unpaid. In early March 1982, Ben Ruiz, who was the assignee of the Platts' rights under the Platts' contract with plaintiff, sent notice to plaintiff of default on payments for December 1981, and January through March 1982. Plaintiff did not make the payment necessary to cure the default. Finally, in April 1982, the escrow agent delivered the deed for the mobile home park to Ruiz, and by filing the deed and an affidavit of default, Ruiz cut off the rights of all subsequent purchasers of the mobile home park—plaintiff, defendant and the Hoffmans. At that point, then, plaintiff could no longer fulfill his obligation under his contract with defendant, and yet he continued to demand that defendant make payments on the promissory notes.

■ The general rule is that an action for the unpaid balance of the purchase price under a contract is in effect an action for specific performance, and cannot be maintained by the seller unless he has performed his own part of the contract, or is willing and able to perform it. *Hopper v. Reynolds*, 81 N.M. 255, 466 P.2d 101 (1970);

*Hilger v. Cotter,* 75 N.M. 699, 410 P.2d 411 (1966). This general principle is bolstered where, as in this case, the contract between the parties expressly provides that if the buyer defaults the seller may *either* rescind the contract and terminate the buyer's rights in the property, *or* enforce payment of the unpaid balance of the purchase price. *Hopper v. Reynolds.* In the instant case, Clause 8 of the contract between plaintiff and defendant states that if the buyer, defendant, defaults, "then the owner may, at his option, either declare the whole amount remaining unpaid to be then due, and proceed to enforce the payment of the same; or he may terminate this contract and retain all sums theretofore paid hereunder * * *."

New Mexico courts have not directly addressed the issue now on appeal and there is a conflict in other jurisdictions as to whether a promissory note given in lieu of a cash downpayment can be enforced even after the contract fails. *Compare Horton v. Hedberg,* 143 Colo. 62, 351 P.2d 843 (1960) (note can be enforced), *with Adamczik v. McCauley,* 89 Mont. 27, 297 P. 486 (1931) (note cannot be enforced). *See also* Annot., 30 A.L.R. 631 (1923). We do not reach the question here, because even those cases holding that such notes can be enforced agree that it must be clear from the facts that the parties did indeed intend that the note was to be a down payment and therefore binding if the contract failed. *See Davies v. Boyd,* 73 N.M. 85, 385 P.2d 950 (1963); *Horton v. Hedberg; Weitzel v. Alles,* 137 Colo. 165, 322 P.2d 698 (1958).

In this case, first of all, the notes were not given in lieu of cash but in lieu of contract rights. The consideration for which the notes were substituted, in other words, was itself a right to payment over time. It is not at all clear that even if the transaction had been executed as originally planned, with defendant transferring to plaintiff his rights under the Catsavis contract rather than promissory notes, plaintiff could have continued to receive payments on the Catsavis contract after the contract between plaintiff and defendant failed.

More importantly, however, nowhere in the real estate contract, the security assignment of the Catsavis contract, or the promissory notes themselves is there any indication that the notes were intended by the parties to represent a down payment and therefore to be binding even if the underlying contract failed. Likewise, defendant's actions after the execution of the contract, treating the obligation on the notes differently than the obligation to make wraparound payments, do not indicate that defendant regarded himself as absolutely bound on the promissory notes. Since there is no sufficient indication that the notes are anything more than they appear to be—an obligation to pay over time as long as the underlying contract remained in effect—the trial court was correct in dismissing the complaint. *Hopper v. Reynolds; Davies v. Boyd.*

Plaintiff also argues that defendant caused the failure of the contract in this case, by failing to make payments on the contract when his purchasers, the Hoffmans, began to fall behind on those payments. Plaintiff argues that defendant should not be allowed to escape liability caused by his own misconduct. This argument applies equally to plaintiff, however. Plaintiff's inability to perform under his contract with defendant is due to plaintiff's default in his obligations to Ruiz. *Hilger v. Cotter.*

We affirm the judgment of the trial court. Appellees shall recover their costs expended on this appeal.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.